**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEXINGTON FURNITURE INDUSTRIES, INC. d/b/a LEXINGTON HOME BRANDS., | CIVIL ACTION NO. 1:19-cv-6239-PKC |
| *Plaintiff*, | |
| v. | JURY DEMANDED |
| THE LEXINGTON COMPANY, AB d/b/a THE LEXINGTON CLOTHING COMPANY, | |
| *Defendants*. | |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Lexington Furniture Industries, Inc. d/b/a Lexington Home Brands ("Lexington"),

through its undersigned attorneys, brings this First Amended Complaint against Defendant The

Lexington Company, AB d/b/a Lexington Clothing Company ("LCC") and alleges as follows:

### THE PARTIES

1.      Lexington is an entity formed under the laws of the State of North Carolina with

its principal place of business at 1300 National Highway, Thomasville, North Carolina 27360.

2.      Defendant LCC is an entity formed under the laws of Sweden with a regular and

established place of business in the State of New York at 73 Main Street, East Hampton, New

York 11937. Defendant LCC may be served with process through its registered agent, Nixon

Peabody, LLP, located at 50 Jericho Quadrangle, Suite 300, Jericho, New York 11753.

### FACTUAL BACKGROUND

3.      Lexington is a global leader in the design, sourcing, manufacturing, and lifestyle

marketing of upscale home furnishings.

4.     Lexington's award-winning product line includes wood, upholstery, and outdoor living designs, and comprises one of the industry's most diverse ranges of styling.

5.     As a longstanding leader in home furnishings, Lexington has developed strong intellectual property rights associated with the famous LEXINGTON brand.

6.     Founded in 1901, Lexington has used the LEXINGTON mark in connection with its home furnishings since 1964.  Lexington federally registered the LEXINGTON trademark over 30 years ago and has continuously used the trademark since.

7.     As detailed in the table below, Lexington owns federal trademark registrations for a family of marks, including LEXINGTON and LEXINGTON HOME BRANDS (the "LEXINGTON Marks"), attached as Exhibits 1-5, respectively.

| Mark | Registration Number and Date of First Use | Goods and Services |
|---|---|---|
| LEXINGTON | No. 1504866<br>May 10, 1964 | IC 020. Bedroom, Dining Room, Living Room, Occasional and Upholstered Furniture |
| LEXINGTON FURNITURE INDUSTRIES | No. 1576409<br>May of 1981 | IC 020. Living Room, Dining Room, Bedroom and Occasional Furniture, upholstered and unupholstered, made of wood, wicker, or a combination of wicker and wood; namely - Beds, Dressers, Chests, Mirrors, Tables, Baby Cribs, Cabinets, Buffets, Hutches, Servers, Party Sets, Chairs, Benches, Etageres, Wall Units, Bars, Entertainment Centers, Desks, Bookcases, Sofas, Love Seats, Ottomans, Sleeper Sofas, Rocking Chairs, and Recliners |
| LEXINGTON | No. 4379049<br>March 31, 2000 | IC 020. Furniture |

| Mark | Registration Number and Date of First Use | Goods and Services |
|---|---|---|
| LEXINGTON HOME BRANDS | No. 4468729 March 31, 2000 | IC 020. Furniture |
| LEXINGTON HOME BRANDS | No. 2684161 May 31, 2000 | IC 020. Furniture |

8.      On January 22, 2004, LCC filed an application for registration of LEXINGTON in connection with "bed linen; bed clothes, namely, pillow shams, bed covers, bed spreads, blankets, sheets, pillow cases, mattress covers; handkerchiefs; household linen; table linen; cloth coasters; curtains; textile place mats; textile napkins; towels."

9.      After LCC's application was registered, Lexington learned of LCC's registration of the LEXINGTON mark and realized that any use of the LEXINGTON mark was likely to cause confusion among the consuming public and mislead Lexington's customers.

10.     In order to protect its intellectual property rights in the LEXINGTON Marks, Lexington initiated a proceeding with the United States Patent and Trademark Office ("USPTO") to cancel LCC's trademark registration (the "Cancellation Proceeding").

11.     On June 22, 2011, the USPTO issued an opinion finding that Lexington has prior user status in the LEXINGTON mark. The USPTO also found that "because the marks are similar, the goods are related and the goods move in the same channels of trade and are sold to the same classes of consumers, [LCC's] mark LEXINGTON and design for household linens so resembles [Lexington's] LEXINGTON marks for furniture as to be likely to cause confusion." *Lexington Furniture Industries, Inc. v. The Lexington Company, AB*, Case No. 92048578 (T.T.A.B. 2011), http://ttabvue.uspto.gov/ttabvue/v?pno=92048578&pty=CAN&eno=57

(Exhibit 6). As a result, the USPTO granted Lexington's request to cancel LCC's LEXINGTON registration.

12.     At the time of the first litigation before the USPTO, LCC had not used the LEXINGTON mark in the United States.

13.     LCC appealed the USPTO's cancellation of its mark to the United States Court of Appeals for the Federal Circuit ("CAFC").

14.     Before the CAFC issued a decision, Lexington and LCC entered into a binding settlement agreement (the "Settlement Agreement"), the terms of which are confidential.

15.     Under the Settlement Agreement, LCC agreed to specific limitations on its use of the LEXINGTON mark in the United States intended to eliminate the likelihood of confusion among the consuming public.

16.     Since entering into the Settlement Agreement, it has come to Lexington's attention that LCC is using the LEXINGTON mark when advertising to consumers in the United States, in direct violation of the Settlement Agreement and Lexington's intellectual property rights.

17.     LCC's use of the LEXINGTON mark in connection with textiles and other home goods is particularly troubling in light of the frequency with which fashion and lifestyle brands cross over into furniture and related goods in today's market, thereby increasing the likelihood that consumers will mistakenly believe that LCC's products emanate from or are approved by Lexington.

## JURISDICTION AND VENUE

18.     This is a civil action for trademark infringement, unfair competition, false designation of origin, and dilution under the Lanham Act, unfair trade practices and trademark

dilution under New York law, and common law breach of contract, trademark infringement, unfair competition, and unjust enrichment.

19.     This Court has subject matter jurisdiction over this lawsuit under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Lexington's state and common law claims under 28 U.S.C. § 1367(a).

20.     This Court has jurisdiction over Defendant LCC under at least Sections 302(a)(1) and (a)(3) of New York's long-arm statute. Defendant LCC is subject to the personal jurisdiction of this Court because it has purposely availed itself of the benefits of New York commerce, including through its brick-and-mortar store located at 73 Main Street, East Hampton, New York 11937. Through this store and otherwise, Defendant LCC directly advertises and sells products to consumers in the United States, including residents of New York and this judicial district.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

### Lexington and the Famous LEXINGTON Marks

22.     The home furnishings industry is rife with competition as consumers continuously rely upon brand recognition when making purchasing decisions.  Branding therefore plays a significant role in the industry.  Established and well-known marks, like the LEXINGTON Marks, not only help consumers differentiate between the various manufacturers, but are often associated in the minds of consumers with varying levels of quality, design execution, reliability, and value that set the different manufacturers apart from one another.

23.     For over 100 years, Lexington has provided home furnishings to customers throughout the United States and abroad. Lexington's product line includes pieces for every room of the home, including bedroom, dining room, living room, home office, media room, and

outdoor living spaces.  Lexington also designs and manufactures custom upholstery for both indoor and outdoor use.

24.     Today, Lexington sells its products through its three showrooms (located in Manhattan in New York City, New York; High Point, North Carolina; and Denver, Colorado), and two company-owned retail stores in Austin, Texas and Newport Beach, California. Lexington also sells its products through a network of thousands of independent furniture retailers, interior designers, design firms, trade showrooms, and select internet retailers.

25.     Lexington's New York City showroom is its largest retail location, with nearly 10,000 square feet of dedicated showroom space in the New York Design Center, a world-renowned destination for fine home furnishings for both industry professionals and consumers.

26.     Lexington invests significant effort and resources into advertising its products. Lexington conducts both national and regional advertising campaigns, including targeted direct mail consisting of over 2 million LEXINGTON lifestyle circulars to United States households annually, large-scale LEXINGTON branded consumer email campaigns, advertising in national magazines such as *Architectural Digest*, *Traditional Home* and *Luxe Interiors + Design*, and television commercials in regional markets.

27.     In addition to traditional advertising, Lexington advertises and interacts with its customers through its website, accessible at https://www.lexington.com, as well as through social media platforms, including Facebook, Instagram, Twitter, Pinterest, Vimeo, and YouTube.

28.     Lexington also markets and advertises its products through home furnishings internet retailers such as Wayfair.com, Houzz.com and LuxeDecor.com.  These websites feature dedicated LEXINGTON brand landing pages, and conduct LEXINGTON branded email and printed direct mail campaigns.

29.     Lexington's network of authorized independent dealers also advertise the LEXINGTON brand extensively.  Part of the value Lexington offers exclusively to its authorized retailers is the ability to leverage the LEXINGTON brand in their own advertising, including on social media.  As a result, authorized independent retailers nationwide also advertise the LEXINGTON brand in print, on television, and through social media accounts on Facebook, Instagram, Twitter, Pinterest, Vimeo and YouTube.

30.     Beyond individuals, Lexington has custom contract and hospitality customers including household names such as Marriott, Disney, Mandarin Oriental, and Hilton.

31.     To further expand its reach and name recognition, Lexington also collaborates with other well-known consumer brands, including Tommy Bahama Home®, Artistica Home®, Barclay Butera®, and Sligh® to offer a diverse range of styling in its assortment.

32.     Through its continuous and substantial exclusive use of the LEXINGTON Marks, Lexington has developed significant goodwill and distinctiveness in its trademarks. The LEXINGTON Marks have become associated in the minds of the public with Lexington, its home furnishing goods and the design services provided by authorized LEXINGTON retailers.

**Defendant LCC's Intentional and Willful Violation of Lexington's Rights**

33.     Lexington Company AB (previously defined as LCC) is a Swedish company founded in 1997.  LCC operates in the United States under the "Lexington Clothing Company" name.

34.     LCC's product line includes home goods and textiles for the bedroom, bathroom, living room, kitchen, and outdoor spaces (the "LCC Home Products"), in addition to clothing.

35.     In light of the Cancellation Proceeding, LCC is no doubt aware of Lexington and its well-established family of LEXINGTON Marks. Likewise, LCC is, or should be, aware that

its use of the LEXINGTON, alone or in combination with other elements, in connection with the sale, offering for sale, and advertising of the LCC Home Products is a violation of Lexington's intellectual property rights and the Settlement Agreement.

36.     Despite this, LCC recently filed an application with the USPTO to register the LEXINGTON & Design Mark, pictured below, in connection with, among other things, "Tableware, namely, coffee services in the nature of tableware, tea services in the nature of tableware, table plates, cake plates, serving plates, serving bowls, salad bowls, jugs, pitchers; Cookware, namely, pots, pans, steamers; Containers, namely, containers for household use; Combs; Toilet sponges; Brushes, namely, cleaning brushes for barbecue grills, crumb brushes, cleaning brushes for household use; Material for brush-making; Cleaning articles, namely, grill scrapers; Glass, unworked or semi-worked, except building glass; Porcelain ware, namely, porcelain mugs, porcelain flower pots; Glassware for household purposes, namely, beverage glassware, serving bowls, serving plates; Drinking glasses; Pottery, namely, bowls, mugs, cups, jugs, pitchers, plates, vases, candle holders, flower pots; Place mats, not of paper or textile; Potholders; Oven mitts," U.S. Appl. Ser. No. 79/247,773:



(the "LEXINGTON & Design Mark").

37.     LCC is using and attempting to register the LEXINGTON & Design Mark (which uses the same Serife font used by Lexington) despite knowing that such use and registration is highly likely to cause consumers to mistakenly believe that there is an affiliation, sponsorship, or other relationship between LCC and its goods and services, on the one hand, and Lexington and its goods and services, on the other hand.  LCC was undoubtedly aware of that high likelihood of

confusion, given both the parties' history and the USPTO's order in the Cancellation Proceeding, which expressly found a likelihood of confusion based on use of LEXINGTON with goods that are identical and/or related to the goods listed in LCC's application to register the LEXINGTON & Design Mark.

38.     In addition to the use and attempt to register the LEXINGTON & Design Mark, LCC also continues to use LEXINGTON standing alone and LEXINGTON COMPANY in connection with the LCC Home Products and in commercial advertisements, including at least through the LCC website and LCC social media accounts.

39.     LCC's website describes the LCC Home Products using the LEXINGTON mark. For example, the webpage located at https://www.lexingtoncompany.com/us/corporate-information/ states:

Lexington collection and image
With the Lexington range you can always combine colors and styles, whether you live in the city or on the countryside. There are a lot of possibilities to combine the different products, qualities and designs.

The Lexington brand provides the consumer with a complete design concept for home textiles. The collection consists of duvets, pillowcases, sheets, bedspreads, blankets and throws as well as terry towels, bathrobes, pajamas, table linen, kitchen towels, aprons, details and different accessories. From January 2008, we also include an apparel range for both Women and Men in our assortment. Most of our manufacturing is made in Europe and every item is produced to the highest standard using only the best materials, design, workmanship and packaging. Sustainability, environmental friendly production and social responsibility are key words to our Company.

40.     LCC's Facebook page describes the LCC Home Products using the LEXINGTON mark. For example, the "About" portion of LCC's Facebook page, accessible at https://www.facebook.com/pg/lexingtoncompany/about/?ref=page_internal, states:



41.     LCC also uses the LEXINGTON mark in its social media account names. For example, LCC's Instagram handle is "lexingtoncompany" (account available at https://www.instagram.com/lexingtoncompany/).

42.     Prior to filing this lawsuit, Lexington notified LCC by letter that its conduct violated Lexington's intellectual property rights and breached the Settlement Agreement.  Via return letter, LCC refused to change its use of the LEXINGTON mark on its website and social media.

**Defendant LCC Directly Advertises to and Targets U.S. and New York Customers**

43.     LCC advertises the LCC Home Products through traditional advertising channels, retail store locations, and its website and social media accounts. At least some of these advertisements specifically target customers located in the United States and in New York.

44.     For example, LCC maintains a website directed specifically to United States customers, located at https://www.lexingtoncompany.com/us/. The website allows customers to, among other things, purchase LCC products and register for LCC advertisements via email.

45.     Upon information and belief, customers in the United States and in New York have purchased products through LCC's website. Indeed, LCC intends to sell its products to

customers in the United States. The customer service terms on LCC's U.S. website, accessible at https://www.lexingtoncompany.com/us/customer-service/terms, states that "[w]hen purchasing from the US you are in agreement with THE LEXINGTON CO."

46.     LCC also uses the LEXINGTON mark, alone or in combination with other elements, in commercial advertising directed to customers located in the United States and in New York via social media, including through Facebook and Instagram. For example, LCC made the following post about the Memorial Day holiday, one that is specific to the United States, via its Facebook page, accessible at https://www.facebook.com/lexingtoncompany/:



47.     LCC also maintains a Facebook page exclusively for its East Hampton, New York location, accessible at https://www.facebook.com/pages/category/Clothing-Store/Lexington-Company-1660737250886456/. Upon information and belief, customers have purchased LCC products, including the LCC Home Products, at LCC's East Hampton, New York store.

**Defendant LCC's Conduct is Causing Dilution and Irreparable Harm to Lexington**

48.     As described above, Lexington has invested substantial resources for over 50 years to develop its goodwill, including strong name recognition and a reputation for quality, which is important to Lexington's success in the market.

49.     Lexington's family of LEXINGTON Marks has acquired distinctiveness through, among other things, its continuous use in New York and throughout the United States. As a result, the LEXINGTON Marks have become famous.

50.     LCC's use of LEXINGTON, alone or with other elements, has caused, and continues to cause, dilution of the LEXINGTON Marks by blurring and/or tarnishing the goodwill developed by Lexington.

51.     LCC's use of LEXINGTON, alone or with other elements, also threatens the value of the LEXINGTON brand and undermines Lexington's relationships with its authorized distributors who are granted exclusive rights to use the LEXINGTON brand in advertising and on social media.

52.     In addition, LCC's unapproved freeriding on Lexington's goodwill has and will continue to cause actual confusion among consumers. In fact, LCC's actions have caused actual confusion between Lexington and LCC. For example, one of the companies that Lexington collaborates with—Barclay Butera Interiors—acknowledged by email that it "mistakenly followed [LCC] thinking it was [Lexington]" because they "were confused since the company

names are so similar." This company is a Lexington licensor and has a relationship with Lexington dating back over twenty-five years, but it was still confused by LCC's misleading use of LEXINGTON.

53.     LCC's pervasive use of the LEXINGTON mark, alone or with other elements, in violation of Lexington's well-established intellectual property rights and the Settlement Agreement has caused, and will continue to cause, irreparable harm to Lexington unless LCC is enjoined from further dilution of the LEXINGTON Marks.

## CAUSES OF ACTION

### Count I: Trademark Infringement (15 U.S.C. § 1114)

54.     Lexington incorporates paragraphs 1-53 of this Complaint by reference as if fully set forth here.

55.     Lexington owns the LEXINGTON Marks. The LEXINGTON Marks are valid, legally protectable, federally registered marks.

56.     LCC's use of the LEXINGTON mark, alone or in combination with other elements, in connection with the sale, offering for sale, distribution, and advertising of the LCC Home Products is likely to cause confusion, mistake, or deception among consumers, including among current and prospective customers of Lexington and LCC.

57.     LCC's use of the LEXINGTON mark, alone or in combination with other elements, that is identical with, or substantially indistinguishable from, Lexington's famous LEXINGTON Marks is and was intentional and willful.

58.     Lexington has been and will continue to be irreparably harmed unless LCC's use of the LEXINGTON mark, alone or in combination with other elements, in connection with the LCC Home Products is enjoined.

**Count II: Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**

59.     Lexington incorporates paragraphs 1-58 of this Complaint by reference as if fully set forth here.

60.     As described above, LCC has made false and misleading statements on or in connection with the LCC Home Products in commercial advertisements, in promotional materials, and on the LCC Home Products themselves.

61.     LCC's statements were, and continue to be, made in connection with the LCC Home Products in interstate commerce and directed to Lexington's actual or potential customers.

62.     These statements are a false designation of origin, which has caused and is likely to cause confusion, mistake, or deception as to the source or origin of the LCC Home Products provided by LCC. Customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lexington. They are not.

63.     As described above, LCC's actions have already caused actual confusion, mistake, or deception as to the affiliation, connection, or sponsorship of the LCC Home Products among at least individuals at Lexington licensor Barclay Butera Interiors, and upon information and belief, LCC's distributors and customers, who believed that LCC's advertisements and social media page(s) were provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lexington and the famous LEXINGTON Marks.

64.     LCC's commercial use of Lexington's trademarks has caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for LCC's actions, would conduct business with Lexington.

65.     Lexington sent LCC formal notice via letter that its activities breached the Settlement agreement and violated Lexington's intellectual property rights.  LCC refused to cease its infringing conduct.

66.     The likely confusion, mistake, or deception caused by LCC violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     LCC's violation of Section 43(a) of the Lanham Act is and was intentional and willful.

68.     As a direct and proximate result of the likely confusion, mistake, or deception, Lexington has suffered and will continue to suffer irreparable harm if LCC's conduct is not enjoined.

### Count III: Trademark Dilution (15 U.S.C. § 1125(c))

69.     Lexington incorporates paragraphs 1-68 of this Complaint by reference as if fully set forth here.

70.     The LEXINGTON Marks are distinctive and famous within the meaning of 15 U.S.C. § 1125(c) and became famous before LCC began using LEXINGTON in connection with the LCC Home Products. Lexington advertises and uses the famous LEXINGTON Marks extensively throughout the United States, and the marks are highly recognizable in the industry and by the consuming public.

71.     To protect its marks, Lexington actively polices the use of its LEXINGTON Marks by third parties.

72.     LCC is engaged in the commercial use of LEXINGTON, alone or in combination with other elements, in connection with the LCC Home Products.

73.     LCC's actions are damaging and likely to cause dilution of the famous
LEXINGTON Marks through, at the very least, blurring or impairing the distinctiveness of the
LEXINGTON Marks.

74.     Because of LCC's dilution, Lexington has suffered, and will continue to suffer,
irreparable injury and substantial damages, while LCC has been, and will continue to be, unjustly
enriched, unless LCC's conduct is enjoined.

75.     LCC's dilution of the famous LEXINGTON Marks is and was intentional and
willful, and violated the Settlement Agreement by intentionally targeting U.S. consumers on
LCC's U.S. based and targeted website.

76.     The dilution of the famous LEXINGTON Marks caused by LCC violates Section
43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

### Count IV: Unfair Trade Practices (NY Gen. Bus. Law § 349)

77.     Lexington incorporates paragraphs 1-76 of this Complaint by reference as if fully
set forth here.

78.     As described above, LCC's use of the LEXINGTON mark, alone or in
combination with other elements, in the United States in connection with the LCC Home
Products is materially deceptive.

79.     LCC's use of the LEXINGTON mark, alone or in combination with other
elements, is in connection with the advertising and sale of products and directed at customers
located in the United States and in New York.

80.     These commercial statements have and will continue to cause the loss of goodwill
and the loss of current and prospective customers who, but for the false statements made by
LCC, would conduct business with Lexington or Lexington's authorized licensees.

81.     In addition, Lexington has been and will continue to be irreparably harmed unless LCC's use of the LEXINGTON mark, alone and in combination with other elements, in the United States in connection with the LCC Home Products is enjoined.

**Count V: Trademark Dilution (NY Gen. Bus. Law § 360-1)**

82.     Lexington incorporates paragraphs 1-80 of this Complaint by reference as if fully set forth here.

83.     The LEXINGTON Marks are distinctive and famous, including within the meaning of 15 U.S.C. § 1125(c), throughout the United States and specifically within New York.

84.     The LEXINGTON Marks became distinctive and famous before LCC began using LEXINGTON, alone or in combination with other elements, in connection with the LCC Home Products.

85.     LCC is engaged in the commercial use of LEXINGTON, alone and in combination with other elements, in connection with the LCC Home Products in the United States.

86.     LCC's actions are damaging and likely to cause dilution of the distinctive and famous LEXINGTON Marks through, at the very least, blurring or impairing the distinctiveness of the LEXINGTON Marks.

87.     Because of LCC's dilution, Lexington has suffered, and will continue to suffer, irreparable injury and substantial damages, while LCC has been, and will continue to be, unjustly enriched, unless LCC's conduct is enjoined.

**Count VI: Breach of Contract**

88.     Lexington incorporates paragraphs 1-87 of this Complaint by reference as if fully set forth here.

89.     Lexington and LCC entered into the Settlement Agreement in order to resolve the disputes between them, namely the appeal stemming from the Cancellation Proceeding.

90.     Pursuant to the Settlement Agreement, LCC agreed to specific limitations on its use of LEXINGTON intended to eliminate the likelihood of confusion among the consuming public in the United States.

91.     In breach of the terms of the Settlement Agreement, LCC uses the LEXINGTON mark, the LEXINGTON & Design Mark, and the LEXINGTON COMPANY mark in commercial advertisements relating to the LCC Home Products in the United States.

92.     LCC has refused repeated demands by Lexington to cease its infringing use of the LEXINGTON mark, the LEXINGTON & Design Mark, and the LEXINGTON COMPANY mark.

93.     LCC's breach of the Settlement Agreement has caused monetary and non-monetary damage to Lexington, and will continue to damage Lexington unless LCC is enjoined from using the LEXINGTON, alone or in combination with other elements, in violation of Lexington's intellectual property rights and the Settlement Agreement.

**Count VII: Common Law Trademark Infringement**

94.     Lexington incorporates paragraphs 1-93 of this Complaint by reference as if fully set forth here.

95.     Lexington owns the LEXINGTON Marks. The LEXINGTON Marks are valid, legally protectable, federally registered marks.

96.     LCC's use of the LEXINGTON mark, alone or in combination with other elements, in connection with the LCC Home Products in the United States is likely to cause

confusion among consumers, including among current and prospective customers of Lexington and LCC.

97.     Lexington has been and will continue to be irreparably harmed unless LCC's use of the LEXINGTON mark, alone or in combination with other elements, in the United States in connection with the LCC Home Products is enjoined.

### Count VIII: Common Law Unfair Competition

98.     Lexington incorporates paragraphs 1-97 of this Complaint by reference as if fully set forth here.

99.     LCC's use of the LEXINGTON mark, alone or in combination with other elements, is likely to cause confusion, and has caused actual confusion, among consumers as to the source of LCC's products.

100.    LCC's use of the LEXINGTON mark, alone or in combination with other elements, has caused actual confusion, mistake, or deception as to the affiliation, connection, or sponsorship of LCC's products among at least individuals at Lexington licensor Barclay Butera Interiors, and upon information and belief, LCC's distributors and customers.

101.    LCC's use of the LEXINGTON mark, alone and in combination with other elements, is and was intentional and willful.

102.    Lexington has been and will continue to be irreparably harmed unless LCC's use of the LEXINGTON mark, alone or in combination with other elements, in the United States in connection with the LCC Home Products is enjoined.

### Count IX: Common Law Unjust Enrichment

103.    Lexington incorporates paragraphs 1-102 of this Complaint by reference as if fully set forth here.

104.    As described above, LCC has made false and/or misleading statements on or in connection with the LCC Home Products in commercial advertisements, in promotional materials, and on the LCC Home Products themselves.

105.    Customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lexington.

106.    As described above, LCC's actions have already caused actual confusion, mistake, or deception as to the affiliation, connection, or sponsorship of the LCC Home Products among at least individuals at Lexington licensor Barclay Butera Interiors, and upon information and belief, LCC's distributors and customers, who believed that LCC's advertisements and social media page(s) were provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Lexington and the famous LEXINGTON Marks.

107.    These statements have and will continue to cause the loss of goodwill and the loss of current and prospective customers who, but for the false statements made by LCC, would conduct business with Lexington.

108.    As a result, LCC has been, and will continue to be, unjustly enriched at Lexington's expense. It is against good equity and conscience to allow LCC to retain such profits.

**PRAYER FOR RELIEF**

Lexington requests the following relief:

a.  a preliminary and permanent injunction restraining Defendant The Lexington Company, AB d/b/a The Lexington Clothing Company, along with its officers, agents, servants, employees, and attorneys, from:

  i.   using in any manner, including but not limited to as a mark, trade name, hashtag, domain name, social media account, "LEXINGTON," "LEXINGTON COMPANY," the LEXINTON & Design Mark, and any other use of LEXINGTON that is confusingly similar to the LEXINGTON Marks in connection with home goods, home furnishings, home textiles, and related goods in the United States; and

  ii.  registering, attempting to register, and/or maintaining an application or registration with the United States Patent and Trademark Office for "LEXINGTON," "LEXINGTON COMPANY," the LEXINTON & Design Mark, and any other use of LEXINGTON that is confusingly similar to the LEXINGTON Marks in connection with home goods, home furnishings, home textiles, and related goods in the United States. Including but not limited to U.S. Appl. Ser. No. 79/247,773; and

  iii. engaging in any conduct or course of conduct likely to cause confusion, deception, or mistake with respect to Plaintiff Lexington's trademarks, goodwill, or reputation.

b.  an award of Defendant's profits and Plaintiff's damages;

c.  an award of Plaintiff's reasonable attorneys' fees and the costs of this action;

d.      exemplary damages in a sum to be determined by the trier of fact;

e.      pre- and post-judgment interest as allowed by law;

f.      an order requiring Defendant to retract its false statements and engage in corrective advertising; and

g.      such other and further relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: October 16, 2019                       MᴄGᴜɪʀᴇWᴏᴏᴅs LLP

                                               *s/ Brad R. Newberg*
                                               Brad R. Newberg (#BN1203)
                                               bnewberg@mcguirewoods.com
                                               1750 Tysons Boulevard
                                               Suite 1800
                                               Tysons, VA 22102
                                               Tel:  (703) 712-5000
                                               Fax:  (703) 712-5050

                                               Lucy Jewett Wheatley (*pro hac vice*)
                                               lwheatley@mcguirewoods.com
                                               Amanda L. DeFord (*pro hac vice*)
                                               adeford@mcguirewoods.com
                                               800 East Canal Street
                                               Gateway Plaza
                                               Richmond, VA 23219
                                               Tel:  (804) 775-1000
                                               Fax:  (804) 775-1061

                                               Matthew W. Cornelia (*pro hac vice*)
                                               mcornelia@mcguirewoods.com
                                               2000 McKinney Avenue
                                               Suite 1400
                                               Dallas, TX 75201
                                               Tel:  (214) 932-6400
                                               Fax:  (214) 932-6499

                                               *Counsel for Plaintiff Lexington Furniture Industries,*
                                               *Inc. d/b/a Lexington Home Brands*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 16, 2019, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to the following counsel of record:

Craig M. Flanders (CF2009)
**Blank Rome LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
cflanders@blankrome.com

Timothy D. Pecsenye
Samar Aryani-Sabet
**Blank Rome LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
9215) 569-5500
pecsenye@blankrome.com
saryani-sabet@blankrome.com

 *s/ Brad R. Newberg*
Brad R. Newberg