## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LEXINGTON FURNITURE INDUSTRIES, INC. d/b/a LEXINGTON HOME BRANDS., <br><br> *Plaintiff*, <br><br> v. <br><br> THE LEXINGTON COMPANY, AB d/b/a THE LEXINGTON CLOTHING COMPANY, <br><br> *Defendant*. | CIVIL ACTION NO. 1:19-cv-6239-PKC <br><br> JURY DEMANDED |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to Your Honor's Individual Rules of Practice and the Scheduling Order setting

pretrial deadlines in this case (Dkt. No. 116), Plaintiff Lexington Furniture Industries, Inc. d/b/a

Lexington Home Brands submits Plaintiff's Proposed Jury Instructions, attached as Exhibit A.

Dated:  April 30, 2021                    Respectfully submitted,

**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

 */s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
bnewberg@mcguirewoods.com
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5050

Lucy Jewett Wheatley (*pro hac vice*)
lwheatley@mcguirewoods.com
Amanda L. DeFord (*pro hac vice*)
adeford@mcguirewoods.com
800 East Canal Street
Gateway Plaza
Richmond, VA 23219
Tel:  (804) 775-1000
Fax:  (804) 775-1061

Matthew W. Cornelia (*pro hac vice*)
mcornelia@mcguirewoods.com
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499

*Counsel for Plaintiff Lexington Furniture*
*Industries, Inc. d/b/a Lexington Home Brands*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by the Court's

CM/ECF system on April 30, 2021, as follows:

Craig M. Flanders (CF2009)
**Blank Rome LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
cflanders@blankrome.com

Timothy D. Pecsenye
Samar Aryani-Sabet
Blake Fink
**Blank Rome LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
9215) 569-5500
pecsenye@blankrome.com
saryani-sabet@blankrome.com
bfink@blankrome.com

  */s/ Brad R. Newberg*
Brad R. Newberg

# EXHIBIT A

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read. You should feel free to read along or to just listen to me. You will be able to take your copy of the instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the lawyers. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions. First, there are general instructions about your role and about how you are to go about deciding the factual issues in this case. Second, I will instruct you as to the law that applies to the specific claims in this case. Third, there are more general instructions about such matters as communications with the Court, about deliberations, and about returning a verdict.

It is important that you listen carefully. I am reading these instructions from a prepared text because the law is made up of words that are very carefully chosen. This is not a time to ad lib. So when I tell you what the law is, it is critical that I use exactly the right words.


*Authority*: 4 Modern Federal Jury Instructions-Civil P 71.1 (2020).

**B.**    **Role of the Court**

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71.2 (2020).

C.      **Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said—or what I may say in these instructions—about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. At times during the trial I may sustain objections to questions and you may hear no answer, or, where an answer has been made, I may instruct that it be stricken or emoved from the record and that you disregard it and dismiss it from your minds.  You may not draw any inference or conclusion from an unanswered question nor may you consider testimony which has been stricken or removed from the record in reaching your decision.  The law requires that your decision be made solely upon the evidence before you.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Plaintiffs have proven their case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses or of counsel for either party. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the

verdict you should render, or whether any of the witnesses or counsel may have been more credible than any other witnesses or counsel. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71.3 (2020); N.Y. Pattern Jury Instr.—Civil 1:7.

**D.    Jury to Disregard Court's View**

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel you have seen or that was held out of your hearing or sight.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71-5 (2020).

**E.       Role of Counsel**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71.6 (2020).

**F.**     **Objections**

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

The attorneys in this case are advocates for their competing clients and have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

Now, at times during the trial it was necessary for the Court to talk with the lawyers here at the bench outside of your hearing, or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

*Authority*: Adapted from Model Civ. Jury Instr. 9th Cir. 1.13 (2020).

**G.**     **Reprimand of Counsel for Misconduct (*If Necessary*)**

During the course of the trial, I have had to admonish or reprimand an attorney because I did not believe what he was doing was proper. You should draw no inference against him or his client. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71.7 (2020).

**H.      Sympathy**

Under your oath as jurors you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71-10 (2020).

I.      **Burden of Proof**

Plaintiffs have the burden in a civil action, such as this, to prove every essential element of their claims by a preponderance of the evidence. If a plaintiff should fail to establish any essential element of one of its claims by a preponderance of the evidence, you should find for defendant as to that claim.

Defendant has the burden of establishing the essential elements of certain affirmative defenses. I will go into further detail on these affirmative defenses which the Defendant would need to prove  later.

When I instruct you that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not.

*Authority*:  O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions </u>§ 104.01, 04 (hereafter "O'Malley Federal Practice and Instructions").

**J.      Preponderance of the Evidence**

The party with the burden of proof on any given issue has the burden of proving every disputed element of the claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish the claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

You are not bound to decide any issue of fact based on the testimony of any number of witnesses if it does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds. The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—that party must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however

- 11 -

slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 73-2 (2020); O'Malley Federal Jury Practice and Instructions § 104:54

**K.      What Is and Is Not Evidence**

The evidence in this case is the sworn testimony of the witnesses, no matter who called a witness; the exhibits received in evidence, regardless of who may have produced the exhibits; stipulations, and all facts that may have been judicially noticed and that you must take as true for purposes of this case.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

You must disregard anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses. That is not evidence and should not be considered.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

*Authority*:  4 Modern Federal Jury Instructions-Civil P 74-1 (2020); O'Malley Federal Practice and Instructions § 101.40; O'Malley Federal Practice and Instructions § 101.44.

**L.**   **Direct and Circumstantial Evidence**

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 74-2 (2020).

**M.**     **Judicial Notice (*If Necessary*)**

I have taken judicial notice of certain facts which are not subject to reasonable dispute. I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true.  You are required to accept these facts as true in reaching your verdict.


*Authority*: 4 Modern Federal Jury Instructions-Civil P 74-3 (2020).

**N.       Stipulation of Facts**

A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

*Authority*:  O'Malley Federal Practice and Instructions § 101.40.

**O.**     **Stipulation of Testimony (*If Necessary*)**

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect, if any, to be given that testimony.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 74-5 (2020).

**P.**     **Deposition Testimony**

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial. You should give equal weight to deposition testimony that was read aloud in court and that was played via video.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 74.07 (2020).

**Q.      Witness Credibility**

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called on to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 76-1 (2020).

**R.**     **Interest in the Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 76-3 (2020).

**S.      Discrepancies in Testimony**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 76-4 (2020).

**T.      Prior Inconsistent Statements**

You have heard evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 76-5 (2020).

**U.      Charts and Summaries (If Necessary)**

Demonstratives have been shown to you in order to help explain facts disclosed by books, records, and other documents in evidence in the case.  These demonstratives are not themselves evidence or proof of any facts. If the demonstratives do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

The demonstratives are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.


*Authority*: O'Malley Federal Practice and Instructions § 104.50.

## II.    SUBSTANTIVE INSTRUCTIONS

I will now turn to the law that governs the specific claims and defenses in this case.

## A.    The Parties

As you know, the Plaintiff in this case is Lexington Furniture Industries, Inc. d/b/a

Lexington Home Brands. The Defendant in this case is The Lexington Company.

*Authority*: Plaintiff's First Amended Complaint (Dkt. 45) (the "Complaint"); Defendant's
Answer to First Amended Complaint (Dkt. 46) (the "Answer").

**B.** **Plaintiff's Claims**

The Plaintiff in this case, Lexington Home Brands, asserts claims against the Defendant, The Lexington Company, for trademark infringement, unfair competition, dilution, breach of contract, and unjust enrichment in violation of the federal Lanham Act and New York state statutory and common law.

*Authority*: Plaintiff's Complaint (Dkt. 45); Defendant's Answer (Dkt. 46).

C.    **Background Information**

To help you understand the law that you are to apply, I will briefly explain some of the legal concepts and terms.

<u>Definition and Function of a Trademark</u>

A trademark is a word, name, symbol, or any combination of these items, that indicates the source of goods or services. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace.

<u>How a Trademark Is Obtained</u>

A person acquires the right to exclude others from using the same mark or a similar mark in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer.

<u>Trademark Registration</u>

The owner of a valid trademark may obtain a certificate of registration for the trademark issued by the United States Patent and Trademark Office. The registration itself creates a presumption that the registered mark is valid, that the registrant owns the marks, and that the registrant is entitled to exclusive use of the mark in commerce.  Accordingly, when the owner of a trademark registration brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark.

<u>Likelihood of Confusion</u>

To prove infringement, Plaintiff must prove, by a preponderance of the evidence, that Defendant, without Plaintiff's consent, used in commerce a reproduction, copy, counterfeit, or

colorable imitation of Plaintiff's mark in connection with the distribution or advertisement of goods or services, such that Defendant's use of the mark is likely to cause confusion as to the source of the goods or services. It is not necessary that the mark used by Defendant be an exact copy of Plaintiff's mark. Rather, Plaintiff must demonstrate that, viewed in its entirety, the mark used by Defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product or service in question.

*Authority*: Model Civ. Jury Instr. 9th Cir. 15.1 (2020); 15 U.S.C. § 1115.

**D.**     **Trademark Liability – Theories and Policies**

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if Defendant is liable to Plaintiff for violating trademark law. These facts are relevant to whether Defendant is liable for:

1.     Infringing Plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers or business customers; and

2.     Unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of Plaintiff's goods.

*Authority*: Model Civ. Jury Instr. 9th Cir. 15.5 (2020).

**E.** **Plaintiff's Burden of Proof**

In this case, the Plaintiff, Lexington Home Brands, contends that the Defendant, The Lexington Company, has engaged in trademark infringement, unfair competition, and dilution, breached a Settlement Agreement between the Parties by using LEXINGTON in violation of Plaintiff's rights in the LEXINGTON trademarks, and was unjustly enriched. The Plaintiff has the burden of proving by the preponderance of the evidence each element of Plaintiff's claim. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Defendant infringed or diluted the Plaintiff's LEXINGTON marks, engaged in unfair competition and/or breached the Settlement Agreement between the Parties. You will decide each of these claims separately and for each claim, you will have to decide whether the Plaintiff has proved that claim by the preponderance of the evidence.  You may decide that Plaintiff has proven all, some, or none of its claims against Defendant.

*Authority*: Model Civ. Jury Instr. 9th Cir. 15.1 (2020), *modified* to provide clarification that claims be decided separately.

**F.      Trademark Infringement**

In order to prove its federal and common law trademark infringement claims, Plaintiff Lexington Home Brands must prove by a preponderance of the evidence both of the following two elements:

1.      That Plaintiff's trademark(s) are entitled to protection; and

2.      Defendant's use of the same or substantially similar mark is likely to cause confusion.

If you determine that Defendant The Lexington Company is liable for infringing Plaintiff's LEXINGTON trademarks, your verdict should be for the Plaintiff. You must then decide the extent of the damages owed to Plaintiff Lexington Home Brands by Defendant.

*Authority*: Model Civ. Jury Instr. 9th Cir. 15.6 (2020); *Flat Rate Movers, Ltd. v. Flatrate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 379 (S.D.N.Y. 2015).

### i. Presumed Validity and Ownership – Registered Trademark

I previously gave you an instruction that Plaintiff has the burden of proving by a preponderance of the evidence that Plaintiff owns valid and protectable trademarks. A valid trademark is a word, name, symbol, device, or any combination of these that indicates the source of goods or services and distinguishes those goods or services from the goods or services of others. A trademark becomes protectable after it is used in commerce.

One way for Plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits ___ through ___ are certificates of registration from the United States Patent and Trademark Office. In this case, there is no dispute that Plaintiff is the owner of these LEXINGTON trademarks and that these registrations are now "incontestable" under the trademark laws. This incontestability of Plaintiff's trademarks under the law means that Plaintiff's registration of the trademarks is conclusive evidence of Plaintiff's ownership of those trademarks and that the trademarks are valid and protectable. I instruct you that for purposes of Instruction ___, you must find that Plaintiff owned valid and protectable trademarks, meaning that you will only have to decide likelihood of confusion on Plaintiff's trademark claims.

*Authority*: Model Civ. Jury Instr. 9th Cir. 15.8 & 15.15 (2020); 15 U.S.C. § 1115(b); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

### ii. Likelihood of Confusion

You must consider whether Defendant's use of the trademarks at issue is likely to cause confusion about the source, origin, or sponsorship of Defendant's goods or services, such that consumers or potential consumers of Defendant's goods and services might believe that Defendant and/or Defendants' goods and services originate from, are sponsored or approved by, or are in some other way affiliated with Plaintiff.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion, you should examine and balance the following:

1. <u>Strength of Plaintiff's Mark</u>. The more the consuming public recognizes Plaintiff's trademark as an indication of origin of Plaintiff's goods or services, the more likely it is that consumers would be confused about the source of Defendant's goods or services if Defendant uses a similar mark.

2. <u>Similarity of Plaintiff's and Defendant's Marks</u>. If the overall impression created by Plaintiff's trademark in the marketplace is similar to that created by Defendant's trademark in appearance or meaning, there is a greater chance of likelihood of confusion. The marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the mark. You may find that the marks are similar when there is overlap in the marks' dominant terms, even if the marks contain other dissimilar words or features.

3. <u>Similarity of the Goods and Services that the Marks Identify</u>. If Defendant and Plaintiff use their trademarks on the same, related, or complementary kinds of goods or services, it is more likely that there will be confusion about the source of the goods or services than

otherwise. Plaintiff's and Defendant's goods or services need not be identical or in direct competition with each other. If Plaintiff and Defendant use their trademarks on related goods such that consumers are likely to assume the goods emanate from the same source or that one party sponsors or endorses the other's goods or that they are affiliated, then there is a greater chance of likelihood of confusion.

4. <u>Product Line Expansion / Bridging the Gap</u>. Even if the parties' products differ, you may consider how likely Plaintiff is to begin selling the products for which Defendant is using Plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

5. <u>Actual Confusion</u>. If use by Defendant of LEXINGTON has led to instances of actual confusion, this is often dispositive of a likelihood of confusionHowever, on the other hand, because actual confusion is often hard to record, actual confusion is not required for a finding of likelihood of confusion. Even if Plaintiff did not show that actual confusion occurred, you may still find that Defendant's use of LEXINGTON may still be likely to cause confusion. As you consider whether the trademark used by Defendant creates a likelihood of confusion with Plaintiff's trademarks, you may weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, Defendant has made a very large volume of infringing sales, but only a few isolated instances of actual confusion, you may find that there has been actual confusion but it has not been substantial.

6. <u>Defendant's Intent</u>. A Defendant need not act with the intent to create confusion for a likelihood confusion to exist.  However, knowing use by Defendant of Plaintiff's trademark

to identify similar goods or services may strongly show an intent to derive benefit from the reputation of Plaintiff's mark, suggesting an intent to cause a likelihood of confusion. Bad faith or willful infringement of Plaintiff's trademark rights by Defendant may also show an intent to confuse or deceive.  Where a Defendant acts with an intent to confuse or deceive, this makes consumer confusion more likely.

7. <u>Quality of Defendant's Goods</u>. If Defendant uses Plaintiff's trademark on goods that are similar or related but inferior to Plaintiff's goods, there is a greater likelihood of Defendant's reliance on the similarity of its marks to Plaintiff's trademark to generate undeserved sales.

The factors I just explained to you are for you to weigh as you see fit in deciding whether the preponderance of evidence is that consumers in the marketplace are likely to be confused. However, these factors should not be applied in accordance with some rigid formula.  Each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion, and some factors you might find more relevant to this case than others and you are allowed to weigh some factors more than others.  Plaintiff needs not prove every one of these factors to satisfy its burden on its trademark claims.  Plaintiff needs only prove by a preponderance of evidence that the balance and weight of the relevant factors makes it more likely than not that consumers will be confused by Defendant's use of the marks at issue.

*Authority*: *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d. Cir. 1961); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979); *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993); *Charles of the Ritz Grp. Ltd v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987)  Model Civ. Jury Instr. 9th Cir. 15.18 (2020).

### iii. Likelihood of Confusion – Strength of the Trademark

I will give you a little more guidance on what you can consider when you are looking at the factor regarding strength of the Plaintiff's marks.  As I mentioned, Plaintiff's marks are incontestable under the law, which is conclusive evidence of their validity.  However, there are additional factors you may consider when deciding a mark's strength.  The law measures trademark strength by considering two prongs:

1. Acquired Distinctiveness:  This is the amount of marketplace recognition of the mark; and

2. Inherent Distinctiveness:  This is the placement of the mark on the spectrum of strength in terms of how far the name is from the definition of the goods and services being sold.

**Acquired Distinctiveness**:  In assessing the acquired distinctiveness of a mark, you should consider six factors: (1) the Plaintiff's advertising and promotional expenses; (2) any consumer studies linking LEXINGTON to the Plaintiff; (3) the Plaintiff's sales success over time; (4) third-party uses and attempts to plagiarize the mark; (5) length and exclusivity of the Plaintiff's use of LEXINGTON with its products; and (6) unsolicited media coverage of the Plaintiff's products.

**Inherent Distinctiveness**:  Marks fall into one of four groups in increasing order of strength or distinctiveness: (1) arbitrary, (2) suggestive, (3) descriptive, and (4) generic.

Arbitrary marks in no way describe or suggest the nature of the goods or services they are used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be inherently distinctive and strong as a mark.

Suggestive marks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through any steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them. For example, the trademark "Tail

Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

Descriptive marks directly describe some characteristic or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of the ingredients of the juice.

Generic marks describe a product in its entirety and are never entitled to trademark protection. Examples of generic marks are "bleach" and "copiers."

The further away a mark is from the definition of the goods and services being sold, the stronger it is.

Plaintiff's registered trademarks are incontestable. An incontestable trademark enjoys a conclusive presumption of distinctiveness.

*Authority*: *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204–05 (1985); Model Civ. Jury Instr. 9th Cir. 15.10, 15.19 (2020).

### iv.  Willful Trademark Infringement

If you find that Defendant infringed Plaintiff's trademarks, you must also determine whether Plaintiff has proven that, at the time Defendant used the trademarks, Defendant acted willfully. Defendant acted willfully if it had knowledge that its conduct represented infringement or where it recklessly disregarded the possibility that its conduct represented infringement.

*Authority*: Adapted from *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 209-10 (2d. Cir. 2019).

**G.**     **Federal Unfair Competition and Common Law Unfair Competition**

Plaintiff has also asserted a claim for unfair competition under federal law and New York common law. The test for unfair competition is the same as for federal trademark infringement, as I have just given it to you. Therefore, if you find by a preponderance of the evidence that defendant is liable for infringement under the federal statute, which is known as the Lanham Act, that is the statute that I have just completed giving you instructions under, then you must also find that the defendant is liable for common law and federal unfair competition. Conversely, if you find for the defendant on the claim of trademark infringement under the Lanham Act, you must find for the defendant on unfair competition under federal and New York law.

*Authority*: *Car-Freshner Corporation and Julius Sämann Ltd. v. D&J Distributing and Manufacturing,Inc., d/b/a Exotica Freshners Co.*, Case No. 1:14-cv-00391-PKC (Dkt. 102).

**H.**     **Trademark Dilution Under New York General Business Law Section 360-1**

Plaintiff has also asserted a claim for violation of a New York statute, New York General Business Law Section 360-1, which is New York's anti-dilution statute. The essence of a claim under this statute is that Defendant's sales of its products bearing the trademark in question is likely to dilute the distinctive quality of Plaintiff's trademark. This claim is different from Plaintiff's infringement claim and does not require any showing of likelihood of confusion. Rather, the question here is whether Defendant's conduct dilutes Plaintiff's trademark in the ways I will now describe.

First, you must consider whether the Plaintiff's LEXINGTON trademark is a strong mark such that the trademark has become so associated in the public's mind with the Plaintiff that it identifies goods sold by the Plaintiff as distinguished from goods sold by others. For this analysis, you should apply the same standards you considered in connection with the Plaintiff's federal or Lanham Act trademark claims. Thus, if you find that Plaintiff's claimed trademark is strong for the purposes of Plaintiff's federal Lanham Act trademark claim, you should also find that it is strong for purposes of Plaintiff's claim of dilution under New York law.

Second, the Plaintiff must also prove by a preponderance of evidence that there is a likelihood of dilution of Plaintiff's trademark in the form of blurring. Blurring and dilution are different than confusion. "Blurring" occurs where a Defendant uses or modifies the Plaintiff's trademark to identify the Defendant's own products, raising the possibility that Plaintiff's trademark will lose its ability to serve as a unique identifier of the Plaintiff's products. In other words, the question is whether Defendant's use of LEXINGTON somehow cheapens or makes Plaintiff's trademark a weaker brand, no longer as directly associated with Plaintiff.

To determine whether Defendant's use of LEXINGTON is likely to blur the distinctiveness of Plaintiff's LEXINGTON trademark, you should consider the following six factors:

- The degree of similarity between the Parties' respective LEXINGTON trademarks;

- The similarity of the Parties' respective goods;

- The sophistication of the consumers;

- The existence of any bad faith or predatory intent by the Defendant;

- The renown, or fame, of Plaintiff's LEXINGTON trademark; and

- The renown, or fame, of Defendant's LEXINGTON trademark.

These are nonexclusive factors for your consideration. You need not find all or most of them but, rather, should use them as a guide to determine the ultimate question of whether Defendant's trademark is likely to dilute and blur the distinctiveness of Plaintiff's trademark. If you find that Plaintiff has established by a preponderance of the evidence both of these elements, then you must find the Defendant liable under the dilution or New York General Business Law Section 360-1 claim.


*Authority*: *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 966 (2d Cir. 1996); *Car-Freshner Corporation & Julius Sämann Ltd. v. D&J Distributing & Manufacturing, Inc., d/b/a Exotica Freshners Co.*, Case No. 1:14-cv-00391-PKC (Dkt. 102).

## I.     Breach of Contract

In order to prove its breach of contract claim, Plaintiff Lexington Home Brands must prove by a preponderance of the evidence each of the following four elements:

1.      The Settlement Agreement is a valid contract;

2.      Plaintiff performed its material obligations under the Settlement Agreement;

3.      Defendant breached its obligations under the Settlement Agreement; and

4.      Plaintiff sustained damages because of Defendant's breach.

If you determine that Defendant is liable for breaching the Settlement Agreement, you must then decide the extent of the damages Defendant owes to Plaintiff.

<u>Element #1: Existence of a Valid Contract</u>

The Parties do not dispute that the Settlement Agreement is a valid contract. You must therefore find that Plaintiff has satisfied element number one.

<u>Element #2: Plaintiff's Performance</u>

The Parties do not dispute that Plaintiff Lexington Home Brands performed under the Settlement Agreement. You must therefore find that Plaintiff has satisfied element number two.

<u>Element #3: Defendant's Breach</u>

To prove that Defendant breached the contract, Plaintiff must prove by a preponderance of the evidence that Defendant did not do what it promised to do under the Settlement Agreement. If you find that Plaintiff has proven by a preponderance of the evidence that Defendant breached its contractual obligations under the Settlement Agreement, then you will go on to determine whether Defendant's conduct caused Plaintiff to suffer damages. If, however, you find that Defendant did not breach its contract obligations, you will find for Defendant on Plaintiff's breach of contract claim.

<u>Element #4: Damages</u>

If you find that Plaintiff has proven by a preponderance of the evidence that Defendant breached its contractual obligations under the Settlement Agreement, you must then decide whether Defendant's breach directly and proximately caused Defendant to suffer damages. Damages are proximately caused by a defendant's conduct where the evidence demonstrates that defendant's conduct played a substantial part in causing the damage, and that the damage was either a direct result, or a reasonably probable consequence, of the conduct.

If you find that Plaintiff has proven by a preponderance of the evidence each element of its breach of contract claim, including that Defendant's breach directly and proximately caused damage to Plaintiff, then you will find for Plaintiff on its breach of contract claim. If you find that Plaintiff has not proved each element by a preponderance of evidence, then you will find for Defendant.

Later in these instructions, I will instruct you on how to calculate damages should you find in favor of Plaintiff on its breach of contract claim.

*Authority*: New York Pattern Jury Instructions – Civil 4:1; New York Pattern Jury Instructions – Civil 2:70; New York Pattern Jury Instructions – Civil 4:20.

**J.     Unjust Enrichment**

In order to prove its unjust enrichment claim, Plaintiff Lexington Home Brands must prove

by a preponderance of the evidence each of the following three elements:

1.      Defendant was enriched, that is, Defendant gained something;

2.      Defendant's enrichment was at Plaintiff's expense; and

3.      It is against equity and good conscience to permit Plaintiff to retain what is sought

to be recovered.

If you determine that Defendant The Lexington Company was unjustly enriched, your

verdict should be for the Plaintiff. You must then decide the extent of the damages owed to Plaintiff

Lexington Home Brands by Defendant.

*Authority*: *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 182 (2011).

**K.     Damages**

If you find that Plaintiff has proven any of its causes of action, you must also determine the amount of money to award to Plaintiff.

If you find that Defendant is not liable for any of the causes of action, then you should not consider the issue of damages.

i.        **Damages: Trademark Infringement**

If you find that Defendant infringed Plaintiff's trademarks, you must also determine the amount of money to award to Plaintiff. This award should include the profits that Defendant The Lexington Company made because of its infringement.

If you find that Defendant did not infringe Plaintiff's trademarks, then you should not consider this issue.

<u>Defendant's Profits</u>

The Plaintiff is entitled to any profits earned by the Defendant that are attributable to the infringement.

Profits are determined by deducting Defendant's direct expenses from sales. Plaintiff only is required to prove the amount of Defendant's sales. The amount of sales is all of the money Defendant received from using LEXINGTON in the United States in connection with the sale of goods and services.

Defendant The Lexington Company has the burden of proving by a preponderance of the evidence any expenses that it argues should be deducted from sales in determining its profits. To be deducted from sales, Defendant must prove that the expense was incurred in making the infringing sales. Defendants must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products in order to deduct the expense from its gross revenue for infringing sales. Only those expenses that are directly attributable to Defendant's sales of infringing goods may be deducted.  If the defendant fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from gross revenue.

If you find that Defendant failed to prove by a preponderance of the evidence any expenses incurred in making the infringing sales, you should find that the amount of sales is the profit attributable to infringement.

*Authority*: *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 211-13 (2d Cir. 2019); *Car-Freshner Corporation & Julius Sämann Ltd. v. D&J Distributing & Manufacturing, Inc., d/b/a Exotica Freshners Co.*, Case No. 1:14-cv-00391-PKC (Dkt. 102); Model Civ. Jury Instr. 9th Cir. 15.29 (2020).

### ii. Damages: Federal Unfair Competition and New York Common Law Unfair Competition

If you find Defendant is liable for federal unfair competition, you may award the Defendant's profits realized from its infringement of Plaintiff's trademarks. You may use the same method of calculation you use in determining an award of profits for trademark infringement as discussed before, but you should not award the same damages twice for both infringement and unfair competition.

You may, however, also award punitive damages for Plaintiff's common law unfair competition claim if you conclude by a preponderance of the evidence that Defendant's conduct constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree. In the context of unfair competition based upon trademark infringement, punitive damages may be awarded where the infringement was done willfully or in reckless disregard of Plaintiff's trademark rights and where the conduct has met this standard of gross, wanton, or willful fraud, or other morally culpable conduct to an extreme degree.

If you find by a preponderance of the evidence that defendant has engaged in such conduct, then you may determine such amount as you agree is proper and will serve to punish Defendant and to discourage it from engaging in this type of conduct in the future.

*Authority*: *Car-Freshner Corporation and Julius Sämann Ltd. v. D&J Distributing and Manufacturing, Inc., d/b/a Exotica Freshners Co.*, Case No. 1:14-cv-00391-PKC (Dkt. 102).

### iii.  Damages: Breach of Contract

If you find that Defendant breached the Settlement Agreement, then you must determine the amount of Plaintiff's damages.

The basic principle of damages in a contract action is to leave the injured party in as good a position as he or she would have been if the contract had been fully performed. The plaintiff may recover those damages naturally arising from the breach of a contract.

If you find that Plaintiff did not demonstrate actual damages resulting from Defendant's alleged breach of the Settlement Agreement, Plaintiff is entitled to recover nominal damages. Nominal damages consist of some trivial amount in recognition of the technical damage caused by the wrongful conduct of Defendant.

*Authority:* Adapted from N.Y. U.C.C. § 2-713; *KT Grp. Ltd. v. NCR Corp.*, 412 F. Supp. 3d 305, 326 (S.D.N.Y. 2019) (Gardephe, J.).

### iv.  Damages: Unjust Enrichment

If you find that Defendant The Lexington Company was unjustly enriched, then you must determine the amount of Plaintiff's damages.

Damages for unjust enrichment are measured by the monetary benefit to defendant resulting from its unlawful activity, such as profits on infringing sales.

*Authority:* Adapted from *E.J. Brooks Co. v. Cambridge Security Seals*, 858 F.3d 744, 752 (2d Cir. 2017).

### III.    JUROR OATH

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

*Authority*: 4 Modern Federal Jury Instructions-Civil P 71-4 (2020).