**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

LEXINGTON FURNITURE
INDUSTRIES, INC. d/b/a
LEXINGTON HOME BRANDS.,

    *Plaintiff,*

      v.

THE LEXINGTON COMPANY, AB d/b/a
THE LEXINGTON CLOTHING
COMPANY,

    *Defendant.*

CIVIL ACTION NO. 1:19-cv-6239-PKC

JURY DEMANDED

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Pursuant to this Court's Order dated March 23, 2021 (Dkt. 116), Defendant The Lexington

Company, AB d/b/a The Lexington Clothing Company, respectfully submits the proposed jury

instructions as attached hereto.

Dated: June 3, 2021

**BLANK ROME LLP**

Timothy D. Pecsenye (*Pro Hac Vice*)
Blank Rome LLP
130 North 18th Street
Philadelphia, PA 19103-6998
Phone: (215) 569-5500
Email: Pecsenye@BlankRome.com

*Attorney for Defendant
The Lexington Company, AB d/b/a The
Lexington Clothing Company*

# TABLE OF CONTENTS

1. INTRODUCTION ........................................................................................................ 1
   1.1   General Introduction ............................................................................................... 1
   1.2   All Persons Equal Before the Law - Corporations .......................................... 3

2. EVIDENCE ................................................................................................................ 4
   2.1   Consideration of Evidence in the Case ............................................................. 4
   2.2   Use of Notes .............................................................................................................. 6
   2.3   Direct and Circumstantial Evidence ................................................................... 7
   2.4   Credibility of Witnesses ......................................................................................... 8
   2.5   Effect of Prior Inconsistent Statements or Conduct .................................... 10
   2.6   All Available Witnesses or Evidence Need Not Be Produced ................... 11
   2.7   Use of Depositions as Evidence ........................................................................ 12
   2.8   Stipulations of Fact .............................................................................................. 13

3. NATURE OF THE ACTION ................................................................................ 14

4. STANDARD OF PROOF – PREPONDERANCE OF THE EVIDENCE ................... 17

5. BREACH OF CONTRACT ................................................................................... 18
   5.1   Breach of Contract – Burden of Proof ............................................................ 19
   5.2   Breach of Contract – Contract Interpretation – Unambiguous Terms ....................... 21

6. FEDERAL AND COMMON LAW TRADEMARK INFRINGEMENT AND FEDERAL UNFAIR COMPETITION ................................................................................... 22
   6.1   Preliminary Instruction – Trademark ............................................................... 22
   6.2   Definition and Function of a Trademark ........................................................ 23
   6.3   Obtaining a Trademark ....................................................................................... 24
   6.4   Infringement – Elements ..................................................................................... 25
   6.5   Infringement – Elements – Presumed Validity and Ownership – Registered Trademark ................................................................................................................. 26
   6.6   Infringement – Elements – Likelihood of Confusion – Factors ................ 27
   6.7   Infringement – Likelihood of Confusion – Factor One – Strength of Trademark ....... 29
   6.8   Infringement – Likelihood of Confusion – Factor One – Strength of Trademark – Secondary Meaning ............................................................................................... 32

6.9   Infringement – Likelihood of Confusion – Factor Two – Similarity or Dissimilarity of Plaintiff's and Defendant's Trademarks ................................................................... 35

6.10  Infringement – Likelihood of Confusion – Factor Three – Relatedness of the Products ................................................................................... 36

6.11  Infringement – Likelihood of Confusion – Factor Four - Bridging the Gap .............. 37

6.12  Infringement – Likelihood of Confusion – Factor Five – Evidence of Actual Confusion among Consumers ....................................................................................... 38

6.13  Infringement – Likelihood of Confusion – Factor Six – Evidence that Defendant Adopted Plaintiff's Trademarks in Bad Faith ......................................................... 39

6.14  Infringement – Likelihood of Confusion – Factor Seven – Respective Quality of Products ................................................................................................................... 40

6.15  Infringement – Likelihood of Confusion – Factor Eight – Sophistication of Buyers .. 41

**7.   UNFAIR COMPETITION UNDER NEW YORK LAW ............................................. 42**

**8.   TRADEMARK DILUTION UNDER NEW YORK LAW ........................................... 43**

**9.   DAMAGES ............................................................................................................. 45**

9.1   Damages - Breach of Contract ................................................................................. 46

9.2   Damages – Federal / Common Law Trademark Infringement and Federal Unfair Competition ............................................................................................................. 47

9.3   Damages – Unfair Competition under New York Law ............................................. 49

**10.  CLOSING INSTRUCTIONS / DELIBERATION ...................................................... 51**

# 1.   INTRODUCTION

## 1.1   General Introduction

Members of the jury, now that you have heard the evidence and arguments of counsel, it is my duty to instruct you about the applicable law. You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be. These instructions will be in three parts: First, the instructions on general rules that define and control the jury's duties; second, the instructions on the legal elements of the claims in this case; and, third, some rules for your deliberations.

It is your responsibility and duty to find the facts based on all the evidence presented in this case. You are the sole judges of the facts – not counsel and not the court. That fact-finding role is very important. It is for you and you alone to pass upon the weight of the evidence: you will resolve any conflicts you may see in the evidence and you will draw whatever inferences you deem to be reasonable and warranted from the evidence or lack of evidence. With respect to any questions concerning the facts, it is your recollection of the evidence and yours alone that controls.

It is your duty to accept and follow the law as I instruct you in this charge and in any instructions that I have given you during the course of the trial. Whether or not you agree with my instructions on the law, you are bound by them. You are not to ask anyone else about the law, and you are to pay no attention to anything you may have learned about the law in your private lives. My instructions on the law govern. The process by which you arrive at a verdict is first, to decide what the facts are from all of the evidence and the exhibits, and second, to apply the law as I give it to you, to the facts as you have decided them to be. The conclusion thus reached will be your verdict, which will be in the form of answers to written questions, which I will submit to you.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect

137387.00601/125910487v.8

that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you by me, and reach a just verdict, regardless of the consequences.

**Sources**: O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 103:01 (6th ed.); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

137387.00601/125910487v.8

## 1.2 All Persons Equal Before the Law - Corporations

You should consider and decide this case as a dispute between persons of equal standing in the community and of equal worth, and holding the same or similar stations in life. A corporation or other legal entity is entitled to the same fair trial as a private individual. All persons, including corporations and other legal entities, stand equal before the law and are to be treated as equals.

**Sources:** O'Malley, et al., Federal Jury Practice and Instructions § 103:12.

3

## 2.   EVIDENCE

### 2.1   Consideration of Evidence in the Case

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of different pictures painted by both sides. Unless you are otherwise instructed, the evidence in the case consists of: (1) the sworn testimony of the witnesses regardless of who called the witness; (2) all exhibits received in evidence regardless of who may have produced them; and (3) all facts and events that may have been admitted or stipulated to. You should base your decision on all the evidence, regardless of which party presented it.

Statements, questions, and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proven. I will talk about this a little more later.

Objections are not evidence. Lawyers have a right - and sometimes a duty - to object when they believe something should not be a part of the trial. Do not be influenced one way or the other by objections. If I sustain a lawyer's objection to a question or an exhibit, that means the law does not allow you to consider that information. When that happens, you have to ignore the question or the exhibit, and you must not try to guess what the information might have been.

Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence, and you must not consider them. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

*Sources*: O'Malley, et al., Federal Jury Practice and Instructions §§ 103.30, 103.34; Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit Instruction No. 1.04

137387.00601/125910487v.8

(2020); <u>Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co.</u>, No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

137387.00601/125910487v.8

## 2.2   Use of Notes

You may use the notes you take during the trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

**Sources**: O'Malley, et al., Federal Jury Practice and Instructions § 103.02; Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

6

**2.3**   <u>**Direct and Circumstantial Evidence**</u>

Generally speaking, there are two types of evidence presented during a trial – direct evidence and circumstantial evidence. "Direct" evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect" or "circumstantial" evidence is evidence that *suggests* the existence or nonexistence of a fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence. But keep in mind that you are not permitted to simply guess or speculate. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial. I will explain to you shortly what preponderance of the evidence means.

***Sources***: O'Malley, et al., Federal Jury Practice and Instructions § 104:05; 9th Cir. Civ. Jury Instr. 1.12 (2017); <u>Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co.</u>, No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

## 2.4   Credibility of Witnesses

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. In deciding what the facts are, you must consider all of the evidence that has been offered. In doing this, you must decide which testimony to believe and which testimony not to believe, and also how much weight to give to testimony. There is no magical formula by which you evaluate testimony. You each bring with you to this courtroom all of the experience and background of your lives. In everyday affairs you decide for yourselves the reliability or unreliability of things people tell you. The same tests that you use in your everyday dealings are the tests which you should apply to your deliberations.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else they said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

137387.00601/125910487v.8

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Sources:** O'Malley, et al., Federal Jury Practice and Instructions § 104:43; Ninth Circuit Model Jury Instructions, § 1.14.

9

## 2.5    Effect of Prior Inconsistent Statements or Conduct

Evidence that a witness has said or done something at some other time while not under oath that is inconsistent with the witness's testimony at trial may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

***Sources:*** O'Malley, et al., Federal Jury Practice and Instructions § 105:09; Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

## 2.6     All Available Witnesses or Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

***Sources***: O'Malley, et al., Federal Jury Practice and Instructions § 105:11 (6th ed.).

137387.00601/125910487v.8

**2.7**   **Use of Depositions as Evidence**

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys in the case. The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented in writing under oath. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

*Sources:* O'Malley, et al., Federal Jury Practice and Instructions § 105:02; Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

**2.8    Stipulations of Fact**

In this case, the parties have agreed to – or stipulated to – certain facts. You must

therefore treat these facts as having been proved in this case. The stipulated facts are as follows:

[INCLUDE STIPULATED FACTS]


***Sources***: O'Malley, et al., Federal Jury Practice and Instructions § 102:1; Ninth Circuit Model
Jury Instructions, § 2.2.

13

## 3.   NATURE OF THE ACTION

Now, let me tell you about the substantive claims in this case. As you heard, about 14 years ago, Plaintiff and Defendant had a disagreement over the right to use the trademark Lexington in the United States. As a result, in January 2012, the parties entered into a written Settlement Agreement. According to the terms of the Settlement Agreement, Plaintiff agreed that Defendant could use the trademark Lexington to market and sell home textile products in the United States under certain circumstances.

In 2019, Plaintiff commenced this action, alleging that Defendant violated the Settlement Agreement by using the trademark Lexington in connection with home textile products in the United States and that the use of the trademark Lexington on such products violated what Plaintiff claims are its trademark rights.

Defendant believes that it was acting in accordance with the terms of the Settlement Agreement and that it did not breach that agreement or violate Plaintiff's trademark rights. Defendant claims that Plaintiff is seeking to stretch the scope of its trademark rights beyond what is permissible.

<u>Plaintiff's Claims</u>

Specifically, Plaintiff advances the following legal claims against Defendant:

***First***, Plaintiff claims that Defendant has breached a settlement agreement between the parties in violation of New York state law.

***Second***, Plaintiff claims that, by breaching the settlement agreement, Defendant has engaged in federal trademark infringement and unfair competition by using the term "LEXINGTON" in a manner likely to cause confusion among consumers of home textile products regarding the source, origin or sponsorship of such products.

***Third,*** Plaintiff claims that, by breaching the settlement agreement, Defendant's conduct dilutes the reputation or value of Plaintiff's claimed trademarks in violation of New York state law.

***Fourth,*** Plaintiff claims that, by breaching the settlement agreement, Defendant has engaged in unfair competition in violation of New York law.

[***Fifth,*** Plaintiff claims that, by breaching the settlement agreement, Defendant has been unjustly enriched in violation of New York state law.][1]

As a result of Defendant's alleged conduct, Plaintiff will ask you to find that Defendant is liable for a breach of the settlement agreement, trademark infringement, trademark dilution, [and] unfair competition[, and unjust enrichment,][2] and to award Plaintiff monetary damages.

<u>Defendant's Defenses</u>

Defendant, on the other hand, contests these claims:

***First,*** Defendant asserts that it has acted in accordance with the settlement agreement. As such, all claims against it are moot.

***Second,*** Defendant asserts that it did not infringe upon Plaintiff's trademark rights. In fact, Defendant denies that Plaintiff is entitled to the breadth of trademark protection claimed by it in this case.

***Third***, Defendant denies that its conduct has diluted the reputation or value of Plaintiff's claimed trademark rights.

***Fourth,*** Defendant denies that it engaged in unfair competition.

[***Fifth***, Defendant denies that it has been unjustly enriched.][3]

As a result, Defendant will ask you to find that it is not liable under any of the claims alleged by Plaintiff in this action.

\*      \*      \*      \*      \*

---

[1] Defendant respectfully notes that it has submitted a Motion *in Limine* to preclude this claim. As such, the bracketed section would only apply to the extent the Court denies Defendant's Motion.

[2] <u>See</u> supra footnote 1.

[3] <u>See</u> supra footnote 1.

137387.00601/125910487v.8

I will break down each of these claims for you. It is your responsibility to determine whether Plaintiff has met its burden of establishing each and every claim alleged against Defendant.

**Sources**: Plaintiff's Amended Complaint (Dkt. 45); Defendant's Answer (Dkt. 46); <u>Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co.</u>, No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

16

## 4.   STANDARD OF PROOF – PREPONDERANCE OF THE EVIDENCE

Plaintiff has the burden in this case to prove every element of each of Plaintiff's claims by a preponderance of the evidence. If Plaintiff should fail to establish any element of Plaintiff's claim by a preponderance of the evidence, you must find for Defendant as to that claim.

"Establish by a preponderance of the evidence" means evidence, which, as a whole, shows that the fact sought to be proved is more probable than not. A preponderance of the evidence means the greater weight of the evidence. That does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase "preponderance of the evidence" refers to the quality of the evidence – the weight and effect it has on your minds. In other words, if the evidence supporting a matter at issue, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds belief that what is sought to be proved is more likely true than not true, then the element is proven by a preponderance of the evidence. If the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, then you must return a verdict in favor of Defendant.

In determining whether any fact in issue has been proven by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

For clarity, when I instruct you that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not.

*Sources:* O'Malley, et al., Federal Jury Practice and Instructions §§ 104:01, 104.04 (6th ed.); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions); Patsy's Italian Rest, Inc. v. Banas, Case No. 06-CV-0729 (RER) (E.D.N. Y. 2008) (Jury Instructions).

137387.00601/125910487v.8

5.   **BREACH OF CONTRACT**

Plaintiff has asserted a claim for breach of contract against Defendant. The contract at issue is the written Settlement Agreement entered into by the parties in January 2012, which has been admitted into evidence as Exhibit ____.

It is your responsibility to determine, in the manner I will instruct you, what the contract terms were, whether the party which is charged with breaching any term of the contract did breach, and whether the opposing party suffered damages from that breach for which recovery is permitted under the contract.

It is important to clarify that if you find that Defendant did not breach the Settlement Agreement, you must return a verdict in favor of Defendant on all claims in this case. In other words, if you find that Defendant did not breach the Settlement Agreement, Defendant cannot be held liable for any of the other claims raised by Plaintiff in this case.

On the other hand, if you find that Defendant *did* breach the Settlement Agreement, you will continue to analyze all of the remaining claims raised by Plaintiff in this case.

*Sources*: Matthew Bender, New York Form Jury Instructions § 3.01 (modified).

137387.00601/125910487v.8

## 5.1   <u>Breach of Contract – Burden of Proof</u>

To prevail on a breach of contract claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. The existence of a contract between the parties;

2. Plaintiff performed its obligations under the contract;

3. Defendant actually did breach the contract; and

4. The breach of the contract in fact caused the damages sought by Plaintiff.

<u>Factors 1 and 2</u>

The parties in this case do not dispute: (1) the first factor – the existence of the Settlement Agreement; or (2) the second factor – that Plaintiff performed its obligations under the Settlement Agreement. As such, you must find these factors have been already satisfied.

It is your duty to determine whether the Plaintiff has proven the remaining factors – factors 3 and 4 – by a preponderance of the evidence.

<u>Factor 3</u>

Turning to factor 3, this factor considers whether Defendant actually breached the Settlement Agreement. To guide your assessment on this factor, I will soon explain to you the principles of contract interpretation which you should apply to the Settlement Agreement.

If you find that Plaintiff has established this factor by a preponderance of the evidence, you must then consider factor 4. If, on the other hand, you find that Plaintiff did not prove this factor by a preponderance of the evidence, you must stop here and return a verdict in favor of Defendant on all claims against it.

<u>Factor 4</u>

Turning to factor 4, this factor considers whether the breach of the contract in fact caused the damages sought by Plaintiff. Under New York law, the mere violation of a contractual

19

provision, standing alone, does not constitute a breach of contract. Rather, Plaintiff also must demonstrate that it suffered damages as a result of the violation. In other words, Plaintiff must establish a causal relationship between the breach of contract and the damages alleged to have been suffered.

Damages are caused by a defendant's conduct where the evidence demonstrates that the defendant's conduct played a substantial part in causing the damage, and that the damage was either a direct result or a reasonably probable consequence of that conduct.

You must determine whether Plaintiff has proven by a preponderance of the evidence each element of a breach of contract claim, including that any breach of Defendant directly and proximately caused damage to Plaintiff. Conjecture, surmise or speculation is not enough to sustain a claim for damages.

*Sources*: Summary Judgment Order dated March 23, 2021 (Dkt. 115); N.Y. Pattern Jury Instr. § 4:1; Zamora v. Morphix Co., Ltd., No. 15-CV-6532 (KBF), 2018 WL 1033228, at *7 (S.D.N.Y. Feb. 21, 2018), aff'd, 764 F. App'x 96 (2d Cir. 2019); Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 209, 4 N.E. 264 (1886)

## 5.2   Breach of Contract – Contract Interpretation – Unambiguous Terms

The Settlement Agreement governs the rights and duties of the parties to that agreement, Plaintiff and Defendant. To the extent that the terms of that contract are clear and unambiguous, you must apply the terms of the contract without reference to any evidence other than the terms of the contract itself.

I instruct you that certain of the Settlement Agreement's terms are indeed clear and unambiguous, and that you *must* apply them exactly as written. One such provision is that the plain language of the Settlement Agreement makes clear that the parties intended for Defendant to use "LEXINGTON CLOTHING COMPANY" as the *primary identifier*, but not the sole or exclusive identifier, for its home textile products in the United States.

*Sources*: <u>Alexander and Alexander Serv., Inc. v. Certain Underwriters at Lloyd's London</u>, 136 F.3d 82, 86 (2d Cir. 1998); <u>Town of Wallkill v. Tesa Tape Inc.</u>, 982 F. Supp. 300, 301 (S.D.N.Y. 1997) (where "the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence"); W.<u>W.W. Assocs., Inc. v. Giancontieri</u>, 565 N.Y.S.2d 440, 443 (N.Y. 1990) (same); Matthew Bender, New York Form Jury Instructions § 3.01.

## 6.   FEDERAL AND COMMON LAW TRADEMARK INFRINGEMENT AND FEDERAL UNFAIR COMPETITION

### 6.1   Preliminary Instruction – Trademark

Plaintiff claims federal trademark infringement and unfair competition, as well as trademark infringement under New York common law.

The same standard governing Plaintiff's federal trademark infringement claim also governs Plaintiff's federal unfair competition claim and common law trademark infringement claim. So you only need to analyze Plaintiff's federal trademark infringement claim.

And the verdict you return on the federal trademark infringement claim will be the same as the verdict you return on the federal unfair competition claim and common law trademark infringement claim.

To help you with this assessment, and to understand the evidence that was presented in this case, I will explain some of the legal terms you have heard during this trial.

**Sources:** LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A., 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016), aff'd, 720 F. App'x 24 (2d Cir. 2017).

## 6.2   Definition and Function of a Trademark

A trademark is a word, symbol, or combination of words or symbols used by a person or entity to identify products, to distinguish its product from those manufactured or sold by others, and to indicate the source of its product. For example, the Nike swoosh symbol is a trademark that is used to identify and distinguish Nike sneakers from other sneakers in the market.

The purpose of trademark law is to prevent confusion among consumers about the sources of products and to permit trademark owners to show ownership of their products and control their product's reputation.

The legal principles regarding the law of trademark infringement discussed in these instructions result from attempts to balance the following conflicting policy objectives:

(1)   the need to protect the public from being misled about the nature and sources of the goods they buy;

(2)   the need to protect the property rights of a business to identify itself and its goods to the public; and

(3)   the need to try to achieve these goals while encouraging fair competition among those providing goods in our free-market economy.

In short, fair competition among those manufacturing and selling goods is encouraged, but unfair competition, including trademark infringement, is destructive of this competitive process.

Because of the conflicting policy objectives involved in cases of this type, each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.

**Sources**: O'Malley, et al., Federal Jury Practice and Instructions § 159:1 (6th Ed.); 4 Leonard B. Sand, et al., Modern Federal July Instructions ¶ 86A.02, Instruction 86A-8 (2005); LUCKY BRAND DUNGAREES, INC., Liz Claiborne, Inc., v. ALLY APPAREL RESOURCES LLC d/b/a Get Lucky, Key Apparel ReSources, Ltd., Marcel Fashion Group, Inc., and Ezra Mizrachi, 2007 WL 5040745 (S.D.N.Y.).

### 6.3   Obtaining a Trademark

A person acquires the right to exclude others from using a trademark by being the first to use the trademark in the marketplace for those particular goods or services. Rights in a trademark are obtained only through commercial use of the trademark.

**Sources:** O'Malley, et al., Federal Jury Practice and Instructions § 159:20; Aini v. Sun Taiyang Co., Ltd., 964 F. Supp. 762, 773 (S.D.N.Y. 1997).

24

**6.4   Infringement – Elements**

To prevail on a trademark infringement claim, Plaintiff has the burden of proving each of

the following elements by a preponderance of the evidence:

> *First*: Plaintiff's LEXINGTON, LEXINGTON HOME BRANDS, and LEXINGTON
> FURNITURE INDUSTRIES trademarks are valid, protectable trademarks;
>
> *Second*: Plaintiff owns the LEXINGTON, LEXINGTON HOME BRANDS, and
> LEXINGTON FURNITURE INDUSTRIES trademarks; and
>
> *Third*: Defendant's use of Plaintiff's trademarks on home textile products was not
> authorized by the Settlement Agreement and is likely to cause confusion among ordinary
> purchasers as to the source of the goods.

If you find that each of the elements on which Plaintiff has the burden of proof has been

proven, your verdict should be for Plaintiff. If, on the other hand, Plaintiff has failed to prove any

of these elements, your verdict should be for Defendant.

*Sources:* 15 U.S.C. § 1114(1); Ninth Circuit Model Jury Instructions, § 15.5; LUCKY BRAND DUNGAREES, INC., Liz Claiborne, Inc., v. ALLY APPAREL RESOURCES LLC d/b/a Get Lucky, Key Apparel ReSourcess, Ltd., Marcel Fashion Group, Inc., and Ezra Mizrachi, 2007 WL 5040745 (S.D.N.Y.).

**6.5**   <u>**Infringement – Elements – Presumed Validity and Ownership – Registered Trademark**</u>

I gave you Instruction No. 6.4 that requires Plaintiff to prove by a preponderance of the evidence that its trademarks are valid and protectable and that Plaintiff owns the claimed trademarks.

In this case, Defendant does not contest that Plaintiff owns valid and protectable trademarks for furniture products as evidenced by the certificate of registration for each mark issued by the United States Patent and Trademark Office.

Exhibits ___ through ___ are certificates of registration from the United States Patent and Trademark Office detailing each mark and goods associated with that mark.

*Sources:* 15 U.S.C. §§ 1057, 1065 and 1115; Ninth Circuit Model Jury Instructions, § 15.8.

137387.00601/125910487v.8

**6.6    Infringement – Elements – Likelihood of Confusion – Factors**

You must then consider whether Defendant's use of the "LEXINGTON" trademark is likely to cause confusion about the source of Defendant's home textile products, meaning whether consumers will mistakenly believe that Plaintiff is the source of Defendant's home textile products or vice versa.

In determining whether there is or will be a likelihood of consumer confusion caused by the use of the "LEXINGTON" trademark by Defendant in connection with home textile products, you may draw on your common experience as citizens of the community. In addition to the general knowledge you have acquired throughout your lifetimes, you may also consider the following factors, which I will describe in more detail:

1.  The strength or weakness of Plaintiff's trademarks;

2.  The similarities or dissimilarities of Plaintiff's and Defendant's trademarks in their entireties;

3.  The relatedness of the products;

4.  Evidence that Plaintiff may "bridge the gap";

5.  Evidence of actual consumer confusion;

6.  Evidence that Defendant adopted Plaintiff's trademarks in bad faith;

7.  The respective quality of the products; and

8.  The sophistication of consumers in the relevant market.

In light of these considerations and your common experience, you must determine if ordinary consumers would be likely to be confused into believing that Plaintiff is the source of Defendant's home textile products or vice versa. No one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at the trial.

In the next instruction, I will begin by describing the first "likelihood of confusion" factor for consideration – the strength or weakness of Plaintiff's trademarks.

27

137387.00601/125910487v.8

***Sources***: Ninth Circuit Model Jury Instructions, § 15.18; <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961).

137387.00601/125910487v.8

**6.7**    <u>**Infringement – Likelihood of Confusion – Factor One – Strength of Trademark**</u>

The first factor to determine is the strength or weakness of Plaintiff's trademarks. This is an important factor to consider in determining the scope of protection accorded to Plaintiff's trademarks. Trademark law protects distinctive or strong trademarks. Trademarks that are not as distinctive or strong are referred to as "weak" marks and receive less protection from infringing uses. Marks that are not distinctive are not entitled to any trademark protection. It is important to note that registered marks may still be deemed "weak."

Spectrum of Trademarks

It is your job to classify Plaintiff's trademarks on the spectrum of trademark distinctiveness that I will explain in this instruction. Trademarks can be grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of their strength or distinctiveness: arbitrary, suggestive, descriptive, and generic trademarks.

The first category is arbitrary trademarks. Arbitrary trademarks are inherently distinctive. They are considered strong trademarks and are clearly protectable. Arbitrary trademarks involve the arbitrary, fanciful, or fictitious use of a word to designate the source of a product. An arbitrary trademark is a word that in no way describes the particular product it is meant to identify. For example, the word "EXXON" for gasoline.

The second category of trademarks is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, suggestive trademarks suggest some characteristic or quality of the product to which they are attached. A suggestive use of a word involves consumers' associating the qualities the word suggests to the product to which the word is attached. For example, "SPARKLE" for dishwasher detergent.

29

The third category of trademarks is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood. Common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it describes where the cider comes from. As you heard, Defendant contends Plaintiff's trademarks fit into this category of descriptive trademarks.

The fourth category of marks is generic marks. These marks are not entitled to any protection at all. These marks are part of our common language that we use to identify all such similar products. These generic marks are the common name for the products to which they are affixed. For example, the word "APPLE" for apples.

<u>Claim of Acquired Distinctiveness</u>

In this case, the U.S. Patent and Trademark Office initially refused registration of Plaintiff's "LEXINGTON" mark on the ground that the mark is geographically descriptive of where its products come from – Lexington, North Carolina. It is uncontested that, in order to overcome this refusal, Plaintiff conceded that the term "LEXINGTON" is geographically descriptive of where its products come from.

<u>Each Party's Position</u>

Despite this, Plaintiff contends that its trademarks are strong indicators of source. If you believe that Plaintiff has established this position by a preponderance of the evidence, you must then go on to Instruction No. 6.9 to consider the remaining "likelihood of confusion" factors.

Conversely, Defendant contends that Plaintiff's trademarks are weak indicators of source and, therefore, entitled to limited protection on the ground that the term "LEXINGTON" merely describes where Plaintiff's products come from – meaning, the marks are "geographically descriptive." If you agree with Defendant, you must then go on to Instruction No. 6.8 to consider whether Plaintiff's trademarks have gained distinctiveness by acquiring "secondary meaning."

***Sources***: O'Malley, et al., Federal Jury Practice and Instructions § 159:62; Ninth Circuit Model Jury Instructions, § 15.10; <u>Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.</u>, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018); 15 U.S.C. §1052(f); 2 McCarthy on Trademarks and Unfair Competition § 15:68 (5th ed.).

137387.00601/125910487v.8

**6.8**  **Infringement – Likelihood of Confusion – Factor One – Strength of Trademark – Secondary Meaning**

If you determined in Instruction No. 6.7 that Plaintiff's trademarks are geographically descriptive, you must determine whether these marks have acquired "secondary meaning." A trademark acquires "secondary meaning" when it has been used in such a way that its primary significance in the minds of consumers is to identify the product's source. Plaintiff needs to prove by a preponderance of the evidence that a substantial segment of consumers made this connection as of 2012 (i.e., the date the alleged infringement began).

Trademark law only protects descriptive marks solely to the extent that mark has acquired secondary meaning. For instance, the words a business might use for its special oil change service, "10-Minute Oil Change," are descriptive when used in connection with this service because it literally describes a feature or attribute of the product or service available there. However, over time, the consuming public may come to associate those four words with a service offered only by that particular garage. The words would no longer solely designate their original, ordinary, descriptive meaning. Instead the words have taken on a new, "secondary" meaning to identify the particular garage that performs the oil change.

It is important to note that Plaintiff's burden is to demonstrate that "secondary meaning" existed **as of 2012**. When you are determining whether Plaintiff's "LEXINGTON" mark has acquired secondary meaning, you should consider the following factors:

(1)  **Length and Exclusivity of Use**. You should consider how long Plaintiff has been using Plaintiff's trademarks and whether such use has been exclusive.

(2)  **Attempts to Plagiarize**. You should consider whether there have been third-party attempts to copy Plaintiff's trademarks. Evidence that a competitor intentionally copied a trademark supports a finding of secondary meaning where the circumstances of the copying indicate intent to benefit from the goodwill of the owner of the trademark through consumer confusion. As it relates to Defendant, you should consider whether Defendant intentionally copied Plaintiff's trademarks.

137387.00601/125910487v.8

(3) **Sales Success of Plaintiff's Home Textile Products Bearing the "LEXINGTON" Mark**. You should consider the sales success, if any, of Plaintiff's <u>home textile products</u> bearing Plaintiff's trademarks.

(4) **Plaintiff's Advertising Expenditures**. You should consider Plaintiff's advertising or promotional expenditures directed to the marking and promotion of its home textile products bearing Plaintiff's trademarks.

(5) **Consumer Studies**. You should consider whether Plaintiff has submitted consumer studies or surveys showing that Plaintiff's trademarks are associated with Plaintiff.

(6) **Unsolicited Media Coverage**. You should consider any unsolicited media coverage of Plaintiff's home textile products bearing Plaintiff's trademarks.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the mark with its owner. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

Plaintiff has the burden of proving that its trademarks have acquired a secondary meaning. Defendant has the burden of proving that Plaintiff's trademarks lack secondary meaning.

The mere fact that Plaintiff is using its trademarks, or that Plaintiff may have begun using these marks before Defendant, does not mean that the trademarks have acquired secondary meaning.

Finally, the mere fact that the U.S. Patent and Trademark Office has registered Plaintiff's "LEXINGTON" trademark based on Plaintiff's claim of acquired distinctiveness does not prove that the "LEXINGTON" mark has in fact acquired secondary meaning. As I have instructed, Plaintiff's burden is to prove that its trademarks have acquired secondary meaning by a preponderance of the evidence prior to 2012.

137387.00601/125910487v.8

If you determine that Plaintiff has not established – by a preponderance of the evidence – that its trademarks have acquired secondary meaning, then you must return a verdict in favor of Defendant on the trademark infringement claim.

On the other hand, if you determine that Plaintiff has established – by a preponderance of the evidence – that its trademarks have acquired secondary meaning, then you must continue to Instruction No. 6.9 for consideration of the remaining "likelihood of confusion" factors.

**Sources:** Ninth Circuit Model Jury Instructions, § 15.11; Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions); Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1221 (2d Cir. 1987); Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985); PlaSmart, Inc. v. Wincell Int'l, Inc., 442 F. Supp. 2d 53, 59 (S.D.N.Y. 2006); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 243 (S.D.N.Y. 2004); GTFM, Inc. v. Solid Clothing Inc., 215 F. Supp. 2d 273, 294 (S.D.N.Y. 2002).

**6.9**    **Infringement – Likelihood of Confusion – Factor Two – Similarity or Dissimilarity of Plaintiff's and Defendant's Trademarks**

The next "likelihood of confusion" factor to consider is the degree of similarity or dissimilarity between Plaintiff's registered trademarks and Defendant's marks used on home textile products. You should assess the overall impression of a consumer, considering the context in which the respective trademarks are displayed to consumers and the totality of factors that could cause confusion among prospective purchasers.

In assessing these similarities, the test is not whether they can be differentiated when compared side-by-side, but rather whether they create a similar overall impression such that a consumer who has seen Plaintiff's trademarks would, upon later seeing Defendant's use of "LEXINGTON" on home textile products, be likely to be confused as to the source of those products.

When evaluating the similarity or dissimilarity of the marks, you should consider the appearance of the respective marks (e.g., logos, font, and stylization) as well as the connotation or meaning behind each mark.


***Sources:*** Ninth Circuit Manual of Model Jury Instructions, Civil § 15.16; Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir. 2006); Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1004-1005 (2d Cir. 1997); Clinique Labs., Inc. v. DEP Corp., 945 F. Supp. 547 (S.D.N.Y. 1996); Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., 37 U.S.P.Q.2d 1417 (S.D.N.Y. 1995); Canon U.S.A., Inc. v. Saber Sales Corp., 220 U.S.P.Q. 1003 (E.D.N.Y. 1983).

**6.10   Infringement – Likelihood of Confusion – Factor Three – Relatedness of the Products**

The next "likelihood of confusion" factor considers whether Plaintiff and Defendant use their trademarks on competing goods. For this factor, you should consider whether and to what extent the parties' products compete with each other as well as the nature of the products themselves and the structure of the relevant market.

The fact that both parties' products may exist within the same industry is not enough. The inquiry, which considers market and geographic proximity, considers whether the two products have an overlapping client base that creates a likelihood of consumer confusion.

*Sources:* Ninth Circuit Manual of Model Jury Instructions, Civil § 15.18; Joules Ltd. v. Macy's Merch. Grp., Inc., 695 F. App'x 633, 636 (2d Cir. 2017); Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004); Strange Music, Inc. v. Strange Music, Inc., 326 F. Supp. 2d 481, 491 (S.D.N.Y. 2004); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

137387.00601/125910487v.8

**6.11**   **Infringement – Likelihood of Confusion – Factor Four - Bridging the Gap**

When the parties' products differ, you may consider how likely Plaintiff is to begin selling the products for which Defendant is using Plaintiff's trademark.

***Sources:*** Ninth Circuit Manual of Model Jury Instructions, Civil § 15.18.

137387.00601/125910487v.8

**6.12**  **Infringement – Likelihood of Confusion – Factor Five – Evidence of Actual Confusion among Consumers**

The next factor considers whether there is any evidence that consumers have actually been confused regarding the source of Defendant's home textile products. The relevant confusion is that which affects the purchasing and selling of the home textile products in question. If Defendant's conduct has led to instances of actual confusion, this circumstance suggests a likelihood of confusion.

You should determine the credibility of each instance of actual confusion as alleged by Plaintiff. Evaluate whether the statements are corroborated and whether the consumers are confused as to the source of Defendant's home textile products.

Inquiries about the relationship between Plaintiff and Defendant do not amount to actual confusion.

In the absence of evidence that anyone has made a mistaken purchasing decision – that is, bought Defendant's home textile products thinking they were Plaintiff's – actual confusion has *not* been established by Plaintiff.


***Sources:*** Ninth Circuit Manual of Model Jury Instructions, Civil § 15.18; Savin Corp. v. Savin Grp., 391 F.3d 439, 459 (2d Cir. 2004); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986); Sly Magazine LLC v. Welder Publications LLC, 529 F. Supp. 2d 425, 440 (S.D.N.Y. 2007); Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 381 (2d Cir. 2005); Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir. 2001); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

**6.13**  **Infringement – Likelihood of Confusion – Factor Six – Evidence that Defendant Adopted Plaintiff's Trademarks in Bad Faith**

This factor asks you to consider whether Defendant adopted Plaintiff's trademarks in bad faith. In other words, it is your duty to determine whether Plaintiff established by a preponderance of the evidence that Defendant adopted Plaintiff's trademarks with the intention of capitalizing on Plaintiff's reputation and goodwill and any confusion between Defendant's products and Plaintiff's products. Bear in mind that even if the party has acted in bad faith, that does not necessarily mean that there is a likelihood of confusion.

**Sources:** Savin Corp. v. Savin Grp., 391 F.3d 439, 459 (2d Cir. 2004); Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 151 (2d Cir.2003); Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't, LLC, 7 F. Supp. 3d 385, 397 (S.D.N.Y. 2014); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

137387.00601/125910487v.8

**6.14**  **Infringement – Likelihood of Confusion – Factor Seven – Respective Quality of Products**

This factor asks you to consider the difference, if any, in quality between Defendant's products and Plaintiff's products. A product of lower quality may adversely affect Plaintiff's reputation and goodwill symbolized by Plaintiff's trademarks.

In this case, the parties have agreed that the quality of their respective products are similar.

***Sources:*** Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 961 (2d Cir. 1996); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

**6.15   Infringement – Likelihood of Confusion – Factor Eight – Sophistication of Buyers**

This factor asks you to consider the sophistication and level of attention and care taken by an ordinary consumer of Plaintiff's products and Defendant's products. When products are relatively inexpensive, the risk of likelihood of confusion is increased because purchasers of such products are likely to exercise a lesser degree of purchasing care and are thus are more prone to confusion or mistake. When products are more expensive, the risk of likelihood of confusion is decreased because purchasers will be more careful and attentive.

In this case, the parties have agreed that both target high-end or affluent consumers.

*Sources*: Star Indus. v. Bacardi & Co., 412 F.3d 373, 390 (2d Cir. 2005); Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 163 (S.D.N.Y. 2013); Car-Freshner Corp. v. Big Lots Stores, Inc., 314 F. Supp. 2d 145, 152 (N.D.N.Y. 2004).

137387.00601/125910487v.8

7.   **UNFAIR COMPETITION UNDER NEW YORK LAW**

Plaintiff has also asserted a claim for unfair competition under New York law. Under New York law, the essence of unfair competition is the bad faith misappropriation, or "passing off," of the labors and expenditures of another in a manner that is likely to cause confusion or to deceive purchasers as to the origin of the defendant's goods.

The test for unfair competition under New York law is the same as for trademark infringement under the Lanham Act, with the additional requirement that Plaintiff must prove – by a preponderance of the evidence – that Defendant acted in bad faith. In considering whether Defendant's acts constitute bad faith, you should consider whether Defendant adopted Plaintiff's trademarks with an actual intention of deceiving or confusing consumers into thinking that its home textile products came from Plaintiff or vice versa.

Specifically, if you find that Plaintiff has proved – by a preponderance of the evidence – both a likelihood of confusion and bad faith, then you should return a verdict in favor of Plaintiff on this claim.

If, however, you find that Plaintiff has not established a likelihood of confusion, or that it has not proved bad faith on the part of Defendant, then you must return a verdict in favor of Defendant on this claim.

**Sources:** Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC, No. 11 Civ. 01794, 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011); CARDINAL MOTORS, INC., v. H&H SPORTS PROTECTION USA, INC., No. 1:20-CV-07899-PAC, 2021 WL 1758881, at *5 (S.D.N.Y. May 4, 2021); Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1997); Jeanine PAYER and Jeanine Payer, Inc., v. B.B. BECKER, LLC, 2005 WL 3287439 (S.D.N.Y.) (Jury Instructions); Express Gold Cash, Inc. v. Beyond 79, LLC, No. 1:18-CV-00837 EAW, 2019 WL 4394567, at *9 (W.D.N.Y. Sept. 13, 2019).

137387.00601/125910487v.8

**8.   TRADEMARK DILUTION UNDER NEW YORK LAW**

Plaintiff also alleged a claim for dilution of its trademarks under New York General Business Law § 360-1. The essence of a claim under this statute is that Defendant's sales of its products bearing the trademark in question are likely to dilute the distinctive quality of Plaintiff's trademarks. This claim is different from Plaintiff's infringement claim and does not require any showing of a likelihood of confusion. Rather, the question here is whether Defendant's conduct dilutes Plaintiff's trademarks in the ways I will now describe.

In order to prevail, Plaintiff must have proven the following two elements by a preponderance of the evidence:

***First***, that Plaintiff's trademarks are inherently distinctive or have achieved acquired distinctiveness through secondary meaning. For this analysis, you should apply the same standards you considered in connection with Plaintiff's federal trademark infringement claim (see Instruction No. 6.8). Thus, if you find that Plaintiff's trademarks are inherently distinctive or have acquired secondary meaning ***as of 2012*** for purposes of Plaintiff's federal trademark infringement claim, you should also find that it is inherently distinctive or has acquired secondary meaning for purposes of Plaintiff's claim of dilution under New York law. Conversely, if Plaintiff has failed to prove its trademarks are inherently distinctive or have acquired secondary meaning, then Plaintiff's claim for a violation of the New York General Business Law § 360-1 must also fail, and you must return a verdict in favor of Defendant on the issue of dilution.

***Second***, Plaintiff must prove by a preponderance of the evidence that there is a likelihood of blurring of the distinctiveness of Plaintiff's trademarks. "Blurring" occurs where a defendant uses or modifies the plaintiff's trademark to identify the defendant's own products, raising the possibility that the plaintiff's trademarks will lose their ability to serve as unique identifiers of the

plaintiff's products. In other words, the question is whether Defendant's trademarks somehow cheapen or make Plaintiff's trademarks a weaker brand, no longer associated with just one company.

The test for whether there is a likelihood of blurring is similar in some ways to the likelihood of confusion test, but the two tests are not the same. You should not assume that if you found a likelihood of confusion that there is also automatically a likelihood of blurring, and vice versa. To determine whether Defendant's use is likely to blur the distinctiveness of Plaintiff's trademarks, you should consider the following six factors:

(1) the degree of similarity between the designs of the parties' respective trademarks;

(2) the similarity of the parties' respective goods;

(3) the sophistication of the consumers;

(4) the existence of any bad faith or predatory intent by Defendant;

(5) the renown or fame of Plaintiff's trademarks; and

(6) the renown or fame of Defendant's trademarks.

*Sources:* U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2011); N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550, 558 (2d Cir. 2002); Katz v. Modiri, 283 F. Supp. 2d 883, 901 (S.D.N.Y. 2003).

137387.00601/125910487v.8

9.   **DAMAGES**

If you find that Defendant is not liable for the alleged claims, then your job is done, and you will not need to consider damages.

Conversely, if you find that Plaintiff has proven its claims by a preponderance of the evidence, you will then determine the amount – if any – of money to award to Plaintiff. You must remember, however, that in calculating damages, Plaintiff is only entitled to be compensated ***once*** for injuries it can prove it actually suffered at trial.

My charge to you on the law of damages must ***not*** be taken as a suggestion that you should find for Plaintiff on any of its claims.

137387.00601/125910487v.8

### 9.1   <u>Damages - Breach of Contract</u>

It is for you to decide on the evidence presented and the rules of law I have given you whether Plaintiff is entitled to recover from Defendant. If you decide Plaintiff is not entitled to recover, you need not consider damages. Only if you decide that Plaintiff is entitled to recover will you consider damages. The burden is on Plaintiff to establish damages with reasonable certainty. Speculative or uncertain damages may not be awarded.

The basic principle of damages in a contract action is to leave the injured party in as good a position as they would have been if the contract had been fully performed. You may only award damages to Plaintiff if you find that Plaintiff has: (1) demonstrated with certainty that the damages Plaintiff seeks were caused by Defendant's breach of the Settlement Agreement; (2) the extent of Plaintiff's loss as a result of that breach has been proven with reasonable certainty; and (3) the damages were fairly within the contemplation of the parties.

New York law also permits nominal damages for breach of contract claims. Although nominal damages are damages in name only and not at all compensatory, they are nevertheless awarded as a formal vindication of a plaintiff's right to compensation which has not been given certain monetary valuation. Where there is no loss or the amount of loss cannot be proven with sufficient certainty, the injured party is entitled to recover nominal damages not to exceed one dollar.

***Sources:*** N.Y. Pattern Jury Instr. § 4:20; <u>KT Grp. Ltd. v. NCR Corp.</u>, 412 F. Supp. 3d 305, 327 (S.D.N.Y. 2019).

137387.00601/125910487v.8

## 9.2   Damages – Federal / Common Law Trademark Infringement and Federal Unfair Competition

If you find that Defendant did not infringe Plaintiff's trademarks, then you should ***not*** consider this issue. Instead, you should return a verdict in favor of Defendant.

In the event that you determine that Plaintiff has proven by a preponderance of the evidence that Defendant has infringed Plaintiff's trademark rights under the Lanham Act (the federal trademark act), then you must consider whether Plaintiff is entitled to an award of damages for Defendant's wrongful conduct. Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury or damage that was proximately caused by Defendant's infringement of Plaintiff's trademarks.

### Defendant's Profits

To the extent Plaintiff has established these claims, you may consider awarding Plaintiff the infringing profits earned by Defendant from the sale of home textile products that are attributable to the infringement.

If you determine that an award of Defendant's profits is appropriate, profit is determined by deducting Defendant's expenses from its gross revenue arising from the sale of infringing home textile products. Plaintiff has the burden of proving by a preponderance of the evidence the amount of Defendant's gross revenue from its sales of home textile products bearing the infringing trademarks.

Expenses are operating and production costs incurred in producing the gross revenue. Defendant has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue and the portion of the profit attributable to factors other than the use of the infringing trademarks. Defendant must demonstrate a sufficient connection between

each claimed expense and the sale of infringing products in order to deduct the expense from its gross revenue for infringing sales.

If you find that a portion of the profit from the sale of Defendant's home textile products using the infringing trademarks is attributable to factors other than use of the infringing trademarks, you should not include this as part of the total profit attributable to the infringement.

**Sources**: 15 U.S.C. § 1117(a); O'Malley, et al., Federal Jury Practice and Instructions § 159:93; Ninth Circuit Manual of Model Jury Instructions, Civil § 15.26; George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992); Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.2d 27, 34 (2d Cir. 1995); PPX Enterprises v. Audiofidelity Enterprises, 818 F.2d 366, 371 (2d Cir, 1987); E-Z Bowz, LLC v. Professional Prod. Research Co., Inc., 2005 WL 535065, at * 12 (S.D.N.Y. Mar. 8, 2005); GTFM, Inc. v. Solid Clothing Inc., 215 F. Supp. 2d 273, 300 (S.D.N.Y. 2002); U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 178 (S.D.N.Y. 2001); Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 420-21 (S.D.N.Y. 2000); Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 747 (S.D.N.Y. 1997); Threeline Imports, Inc. v. Vernikov, 239 F. Supp. 3d 542, 562 (E.D.N.Y. 2017); Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991); Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC, 648 F. Supp. 2d 576, 590 (S.D.N.Y. 2009) ("This Court agrees with those authorities holding that willful deception or bad faith continues to be a prerequisite to an award of profits or damages pursuant to 15 U.S.C. § 1117(a) until the Second Circuit instructs otherwise."); George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992); Jeanine PAYER and Jeanine Payer, Inc., v. B.B. BECKER, LLC, 2005 WL 3287439 (S.D.N.Y.) (Jury Instructions).

### 9.3   Damages – Unfair Competition under New York Law

#### Prohibition on Double Recovery

If you find for Plaintiff on the trademark infringement and unfair competition claims, you must remember that in calculating damages, Plaintiff is only entitled to be compensated ***once*** for injuries it actually suffered. Thus, if you find Defendant liable for both unfair competition and trademark infringement, but you also find that the resulting injury was no greater than it would have been had you found for Plaintiff on only one of those claims, you should award an amount no greater than you would have awarded had you found Plaintiff liable on only one claim.

#### Calculation of Damages

To be eligible to recover for unfair competition under New York law, Plaintiff must have proven: (1) a likelihood of confusion; and (2) Defendant's bad faith or intent. "Bad faith" generally refers to an intent by the defendant to cause confusion. In other words, the question is whether the defendant attempted to exploit the goodwill and reputation of the plaintiff by adopting the mark with the intent to create confusion between the two companies' products.

You may award Defendant's profits in the damages to Plaintiff ***only*** if you find that Defendant's profits were caused by its unfair competition.

#### Punitive Damages

Plaintiff is also requesting punitive damages with respect to its unfair competition claim under New York law. Punitive damages are reserved for rare cases where Plaintiff has proven by a preponderance of the evidence that Defendant's conduct has constituted ***gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree***. Punitive damages may only be awarded where the infringement was done willfully or in reckless disregard of the Plaintiff's trademark rights.

137387.00601/125910487v.8

If you find by a preponderance of the evidence that Defendant has engaged in such conduct, then you may determine such amount as you agree is proper and will serve to punish Defendant and to discourage it from engaging in this type of conduct in the future.

*Sources:* Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 657 (2d Cir. 1989); Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp. 2d 135, 145 (S.D.N.Y. 2000); Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995); U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 178 (S.D.N.Y. 2001); Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991); George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992); Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith."); Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005); KatiRoll Co. v. Kati Junction, Inc., 33 F. Supp. 3d 359, 368 (S.D.N.Y. 2014); Suburban Graphics Supply Corp. v. Nagle, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163-64 (2nd Dep't 2004); Hertz Corp. v. Avis, Inc., 106 A.D.2d 246, 251, 485 N.Y.S.2d 51, 52 (1st Dep't 1985); Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co., 3 A.D.2d 227, 230-31, 159 N.Y.S.2d 606, 609-10 (1st Dep't 1957); Jeanine PAYER and Jeanine Payer, Inc., Plaintiffs, v. B.B. BECKER, LLC, Defendant., 2005 WL 3287439 (S.D.N.Y.) (Jury Instructions).

## 10. CLOSING INSTRUCTIONS / DELIBERATION

Keep in mind that nothing I have said in these instructions, or at any other time, is intended to suggest to you in any way what I think your verdict should be. That is entirely for you to decide. As I said earlier, it is your responsibility to judge the facts in this case from the evidence admitted during the trial and to apply the law as I have given it to you to the facts as you find them from the evidence. Whether or not you agree with the law as given to you by me, you are bound by it. Now that I have explained that law, the last part of my instructions is about how to go about your deliberations as a jury.

To allow your deliberations to proceed in an orderly fashion, you should have a foreperson. The foreperson will be responsible for signing all communications to the court and for handing them to the deputy during your deliberations, but of course their vote is entitled to no greater weight than that of any other juror.

Do not communicate with anyone outside the jury room about your deliberations or about anything else touching this case. There is only one exception to that rule: If it becomes necessary during your deliberations to communicate with me, send a note through the deputy signed by your foreperson. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will not communicate with any of you on any subject touching on the merits of the case other than by a writing or orally here in open court. Do not reveal to any person, not even in a note to me, how you stand, numerically or otherwise, on the merits of the case until you have agreed on your verdict.

Your recollection of the evidence governs. If you wish to have some of the testimony repeated, you may make such request, and you will be brought into the courtroom and the reporter will read those portions you desire to hear. This can be accomplished by giving a note to my

courtroom deputy. Be as specific as you can to avoid spending time listening to a read-back of testimony you did not want, and please be patient because it sometimes takes a while to find the testimony in the record. You will also have all of the exhibits with you in the jury room during your deliberations.

Your duty is to reach a fair conclusion from the law and the evidence. It is an important one. When you are in the jury room, listen to each other, and discuss the evidence and the issues in the case as a group. Each of you has the duty as a juror to consult with your fellow jurors, and to deliberate with a view to reaching an agreement on a verdict if you can do so without violating your individual judgment and conscience. You should not surrender conscientious convictions of what the truth is and about the weight and effect of the evidence. Each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors. But while each of you is entitled to your own opinion, you should freely exchange views with your fellow jurors and listen carefully to each other. While you should not hesitate to change your opinion if you are convinced that another opinion is correct, your decision must be your own.

If Plaintiff has carried its burden of proof as to any claim, your duty is to render a verdict in favor of the Plaintiff on that claim. If the Plaintiff has failed to carry their burden of proof as to any claim, your duty is to find for Defendant on that claim.

This case will be decided on the basis of the answers you give to a series of questions in the special verdict form. As I instructed you previously, each question will require an answer of "yes" or "no." It is important that the views of each juror be considered.

Remember in your deliberations that the dispute between the parties is, for them, no passing matter. They and the court rely upon you to give full and conscientious deliberation and

consideration to the issues and evidence before you. By doing that, you completely fulfill your oaths as jurors to well and truly try the issues of this case and render a true verdict.

This concludes my instructions to you. At this time, let me thank each of you for your thoughtful attention throughout this trial. I will ask you to wait for a few moments while I discuss with counsel whether there is anything further that I need to tell you before asking you to begin your deliberations.

**Sources:** Adapted from Car-Freshner Corporation v. D & J Distributing and Manufacturing, Inc. d/b/a Exotica Freshners Co., No. 1:14-cv-391 (PKC), 2015 WL 6694527 (S.D.N.Y.) (Jury Instructions).

Dated: New York, New York
       June 3, 2021

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Timothy D. Pecsenye*
Timothy D. Pecsenye (*Pro Hac Vice*)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Email: Pecsenye@BlankRome.com

*Attorney for The Lexington Company AB d/b/a The Lexington Clothing Company*

54

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, the foregoing was electronically filed through the Court's

CM/ECF system and thereby served on the following recipients:

**Brad R. Newberg**
McGuire Woods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Tel: (703) 712-5000
bnewberg@mcguirewoods.com

**Lucy Jewett Wheatley**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
lwheatley@mcguirewoods.com

**Amanda L. DeFord**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
adeford@mcguirewoods.com

**Matthew W. Cornelia**
McGuire Woods LLP
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
mcornelia@mcguirewoods.com

*Counsel for Plaintiff Lexington Furniture Industries,
Inc. d/b/a Lexington Home Brands*

By:   */s/ Timothy D. Pecsenye*
       Timothy D. Pecsenye

137387.00601/125910487v.8