IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEXINGTON FURNITURE INDUSTRIES, INC. d/b/a LEXINGTON HOME BRANDS, <br><br> *Plaintiff*, <br><br> v. <br><br> THE LEXINGTON COMPANY, AB d/b/a THE LEXINGTON CLOTHING COMPANY, <br> *Defendant*. | Civil Action No.: 1:19-cv-06239-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE LEXINGTON COMPANY, AB DBA THE LEXINGTON CLOTHING COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLANTIFF'S CLAIMS**

Dated: New York, New York
      June 30, 2022

**BLANK ROME LLP**

Timothy D. Pecsenye (*Pro Hac Vice*)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Email: Pecsenye@BlankRome.com

Craig M. Flanders
Blank Rome, LLP
1271 Avenue of Americas
New York, NY 10020
Phone: 212-885-5000
Email: CFlanders@BlankRome.com

*Attorneys for The Lexington Company AB d/b/a The Lexington Clothing Company*

i

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................1

II.  FACTUAL BACKGROUND..................................................................................2

III. STANDARD OF REVIEW.....................................................................................4

IV.  ARGUMENT...........................................................................................................4

    A.  Defendant is Entitled to Judgment as a Matter of Law as Plaintiff's Trademark Infringement and Unfair Competition Claims are Barred by Laches. ..................4

        i.   Relevant Standard ................................................................................5

        ii.  Plaintiff had Knowledge of Defendant's Marks. ..................................6

        iii. Plaintiff Delay is Inexcusable. .............................................................7

        iv. Defendant Has Been Prejudiced As A Result of Plaintiff's Seven Year Delay in Filing Suit. ........................................................................................8

V.   CONCLUSION......................................................................................................11

137387.00601/126658308v.4

**TABLE OF AUTHORITIES**

**Cases**

Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd., No. 06-3508-CV, 2007 WL 2914452, (2d Cir. Oct. 5, 2007) ................................................................................... 5, 7

Breathe LLC v. White Fox Ventures, Inc., 339 F. Supp. 3d 259 (S.D.N.Y. 2018) ........................ 4

Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Quest De La France, 245 F.3d 1359 (Fed. Cir. 2001) ........................................................................................... 9

Brown v. Sixteen, Inc., No. 02 CIV. 4630 (DAB), 2009 WL 1159161 (S.D.N.Y. Apr. 28, 2009), aff'd sub nom., Brown v. Quiniou, 467 F. App'x 13 (2d Cir. 2012) ..................................... 11

Byron v. Chevrolet Motor Div. of Gen. Motors Corp., No. 93 CIV. 1116 (AJP), 1995 WL 465130 (S.D.N.Y. Aug. 7, 1995) ....................................................................................... 8, 9, 10

Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330 (S.D.N.Y. 2000) ........................... 6

Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187 (2d Cir.1996) ..................................... passim

Deere & Co. v. MTD Holdings Inc., 2004 WL 324890 (S.D.N.Y. Feb. 19, 2004) ................ 5, 10

DeMedici v. Lorenzo DeMedici, Inc., 101 A.D.2d 719, 720, 475 N.Y.S.2d 391 (1st Dep't 1984). ............................................................................................................................... 6

Envt'l Def. Fund v. Alexander, 614 F.2d 474 (5th Cir.), cert. denied, 449 U.S. 919, 101 S. Ct. 316, 66 L.Ed.2d 146 (1980) ................................................................................................. 6

Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483 (S.D.N.Y. 2000), aff'd sub nom., Eppendorf-Netheler-Hinz GMBH v. Nat'l Sci. Supply Co., 14 F. App'x 102 (2d Cir. 2001) ............................................................................................................................. 8, 10

Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413 (2d Cir. 2018).. ............................................................................................................................ 6, 8

Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc., 88 F.Supp.2d 188 (S.D.N.Y.2000) ............. 5

Haggar Int'l Corp. v. United Co. for Food Indus. Corp., 906 F. Supp. 2d 96 (E.D.N.Y. 2012).... 6

Ivani Contracting Corp. v. City of New York, 103 F.3d 257 (2d Cir. 1997) ............................... 5

Larios v. Victory Carriers, Inc., 316 F.2d 63 (2d Cir. 1963); ....................................................... 8

Mahmood v. Rsch. in Motion Ltd., No. 11 CIV. 5345 KBF, 2012 WL 242836 (S.D.N.Y. Jan. 24, 2012) ................................................................................................................................. 6

137387.00601/126658308v.4

Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc., No. 01 CIV. 0849 (JGK), 2002 WL 1560789 (S.D.N.Y. July 15, 2002) .................................................................................. 5, 11

Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209 (2d Cir.2003) ....................................... 5

Patsy's Italian Rest., Inc. v. Banas, 575 F. Supp. 2d 427 (E.D.N.Y. 2008) ................................ 6

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) .............................................. 4

Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037 (2d Cir. 1980) ................................ 5, 6, 7

Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage, 08CV03157(HB), 2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008) .......................................... 6

Tri–Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38 (2d Cir.), cert. denied, 513 U.S. 987, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994) ........................................................................ 6

United States v. Milstein, 401 F.3d 53 (2d Cir.2005) .................................................................. 4

Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y, a division of Merkos L'Inyonei Chinuch, Inc., 697 F. App'x 63 (2d Cir. 2017) .................................................................................. 5, 8

Wiercinski v. Mangia 57, Inc., 787 F.3d 106 (2d Cir. 2015) ....................................................... 4

Wimmer v. Suffolk Cty. Police Dep't, 176 F.3d 125 (2d Cir. 1999) ............................................ 4

**Statutes**

N.Y. Gen. Bus. Law § 360-l ......................................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 50(a) ......................................................................................... 4

**Treatises**

6 McCarthy on Trademarks §31:12 ............................................................................................. 9

6 McCarthy on Trademarks and Unfair Competition § 31:4 (5th ed.) ......................................... 5

137387.00601/126658308v.4

Defendant The Lexington Company, AB d/b/a The Lexington Clothing Company ("LCC" or "Defendant") submits this memorandum of law in support of its Renewed Motion for Judgment as a Matter of Law against Plaintiff Lexington Furniture Industries, Inc. d/b/a Lexington Home Brands ("LFI" or "Plaintiff").

## I. PRELIMINARY STATEMENT

This action is an unwarranted and belated attempt by Plaintiff to assert trademark rights that are unenforceable, meriting judgment as matter of law in favor of Defendant. Indeed, Plaintiff has fallen victim to the most fundamental and time-honored principles of equity, which dictate that "equity aids the vigilant, not those who sleep on their rights."

It is indisputable that the purpose of the Settlement Agreement executed by the parties in January 2012 was to outline each of their respective rights to the "LEXINGTON" mark in the United States. Since then, Defendant has marketed and advertised its products in the United States without a single real instance of a consumer confusion. Indeed, there was no evidence presented at trial showing a consumer purchasing Plaintiff's products while believing it was Defendant's product, or vice versa. These critical facts have not and cannot be disputed by Plaintiff. Yet, *over seven years* after this mutual resolution – and over seven years of non-confusing sales by Defendant – Plaintiff now raises this civil action accusing Defendant of alleged trademark violations *since 2012*.[1] Plaintiff has not and cannot excuse its delay in initiating this lawsuit to Defendant's prejudice.

---

[1] Plaintiff represented to the Court that it had a trademark infringement claim, regardless of whether Defendant breached the parties settlement agreement. See generally Day 2 Tr. at 154:4 – 156:25. The Court apparently accepting this position, modified the Jury Verdict Form to allow the jury to determine whether there was trademark infringement, regardless of the jury's finding on the breach claim. Accordingly, the date for establishing when tolling for laches would begin is in 2012 when Defendant's sales commenced in the United States. Otherwise, the date for establishing when laches begins tolling would be December 20, 2013, the date of the first cease and desist letter.

1

It was Plaintiff's obligation to police and enforce its rights in its marks and the undisputed record before the Court shows that Plaintiff has had substantial opportunities to pursue this action but failed to do so. Instead, under the guide of enforcement, Plaintiff now attempts to recast the Trademark Trial and Appeal Board decision and rewrite the Settlement Agreement to effectively expand its trademark rights in the United States. It is not lost on Defendant that such an inexcusably delayed lawsuit coincided squarely with the acquisition of Plaintiff by a China-based company in the business of manufacturing and distributing home textile products.

The Court should not give credence to Plaintiff's belated attempts to rewrite the Settlement Agreement. Accordingly, Defendant respectfully requests that the Court enter judgment as a matter of law in Defendant's favor on Counts I (Federal Trademark Infringement), II (Federal Unfair Competition and False Designation of Origin), VII (Common Law Trademark Infringement) and VIII (Common Law Unfair Competition) of the Amended Complaint.

## II.   FACTUAL BACKGROUND

LCC is a global brand offering fashion apparel and home textiles. The company was founded in 1997 in Stockholm, Sweden and primarily markets and sells its products in Europe and Asia. See Day 1 Tr. at 56:16-22. LCC's presence in the United States is limited, consisting primarily of its online retail website after its last brick and mortar store closed in December 2019 due to minimal sales. Id., at 94:8-22. LCC is the owner of various trademark applications and registrations worldwide for the "LEXINGTON" mark, including in the United States covering an array of goods such as clothing, household linens and textiles. See Defendant's Exs. DX-8, DX-9, DX-10 and DX-11. LCC's registrations in the United States have reached incontestability status under Section 15 of the Lanham Act. See id.

137387.00601/126658308v.4

LFI is a manufacturer, distributor, and retailer of furniture in the United States. Plaintiff owns a handful of registrations in the United States for the "LEXINGTON" mark, all of which are registered in connection with furniture and related services. See Plaintiff's Exs. A, B, C and D.

Over thirteen years ago, a dispute arose between the parties regarding their respective uses of the "LEXINGTON" mark in the United States. The dispute was resolved with a Settlement Agreement entered into by the parties on January 12, 2012, that outlined each party's rights to use the "LEXINGTON" mark in the United States. See Plaintiff's Ex. AC. Since then, LCC invested substantial resources aimed at marketing its products in the United States in compliance with the Settlement Agreement.

For a period of over seven years, LFI had only contacted LCC twice regarding the Settlement Agreement prior to this action. The first instance was a letter from LFI dated December 20, 2013, in which LFI alleged LCC violated the terms of the Settlement Agreement. See DX-73, at pp. 1-6; Day 2 Tr. At 223:1-225:21. LCC responded that it had not, in fact, violated the Settlement Agreement and laid out its reasoning for LFI. See DX-73, at pp. 7-8; Day 2 Tr. At 223:1-225:21. LFI *never* replied. The second instance was a letter from LFI dated July 18, 2014, in which LFI objected to certain marketing by LCC. See DX-73, at pp. 9-11; Day 2 Tr. At 223:1-225:21. LCC responded again rejecting the suggestion that it had violated the Settlement Agreement. [2] See DX-73, at pp. 12-13; Day 2 Tr. At 223:1-225:21. LFI *never* replied and no further communication was made between the parties thereafter. See id.

In 2017, LFI was acquired by Luolai LifeStyle Technology Co., Ltd. ("Loulai"), which is a China-based company that produces and distributes home textile products. See Day 2 Tr. at 330:15-20. It was only after the Loulai acquisition, and well *over seven years* after the execution

---

[2] Defendant notes that it did make one modification to its website in response to the letter in 2014 to appease Plaintiff.

3

of the Settlement Agreement, that Plaintiff filed the instant lawsuit fabricating trademark claims against Defendant that ***date back to 2012***. See Dkt. 45 ("Amended Complaint").

For the reasons herein, judgment as a matter of law for LCC is warranted on all trademark infringement and unfair competition claims.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 50(a) permits "a party to move for judgment as a matter of law at any time before the case has been submitted to the jury." Breathe LLC v. White Fox Ventures, Inc., 339 F. Supp. 3d 259, 260–61 (S.D.N.Y. 2018) (citing Wimmer v. Suffolk Cty. Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999)). A motion for judgment as a matter of law should be granted if "during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a). "No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b).

In determining the merits of a motion for judgment as a matter of law, the Court "must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113 (2d Cir. 2015) (internal quotation marks omitted).

### IV.   ARGUMENT

    **A.   Defendant is Entitled to Judgment as a Matter of Law Because Plaintiff's Trademark Infringement and Unfair Competition Claims Are Barred by Laches.**

4

Plaintiff waited entirely too long to raise this action to the substantial prejudice of Defendant. As stated *infra*, the record unequivocally establishes that these claims are precluded by the doctrine of laches.

### i. Relevant Standard

"It is well established that the defense of laches may be asserted in trademark infringement cases, see United States v. Milstein, 401 F.3d 53, 63 (2d Cir.2005); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 193 (2d Cir.1996), in which case the defense must be resolved before reaching the merits of plaintiff's trademark claims, see Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 216 (2d Cir.2003)." Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd., No. 06-3508-CV, 2007 WL 2914452, at *1 (2d Cir. Oct. 5, 2007). Laches is an equitable defense that "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 259 (2d Cir. 1997) (internal quotations omitted). "To make out a defense of laches, the defendant must show (1) that the plaintiff had knowledge of defendant's use of its marks, (2) that plaintiff inexcusably delayed in taking action, and (3) that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights by its delay in bringing suit." Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc., 88 F.Supp.2d 188, 196 (S.D.N.Y.2000); Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y, a division of Merkos L'Inyonei Chinuch, Inc., 697 F. App'x 63, 64 (2d Cir. 2017) (citing Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980)).

"The defense of laches is available against both Lanham Act claims and New York state law claims of trademark infringement and unfair competition." Deere & Co. v. MTD Holdings Inc., 2004 WL 324890, at *18 (S.D.N.Y. Feb. 19, 2004) (citing Saratoga, 625 F.2d at 1040-41). "Although laches is an equitable defense, it can be applied in a trademark infringement action to

5

bar ***both*** injunctive relief and monetary damages." Deere & Co., 2004 WL 324890, at *18 (emphasis added); see also Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc., No. 01 CIV. 0849 (JGK), 2002 WL 1560789, at *7 (S.D.N.Y. July 15, 2002) (same); 6 McCarthy on Trademarks and Unfair Competition § 31:4 (5th ed.) (citing cases). Federal courts assessing a laches defense against claims for infringement and unfair competition "analogize to New York's six-year statute of limitations for fraud claims." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018); see also Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage, 08CV03157(HB), 2008 WL 4974800, at *5 (S.D.N.Y. Nov. 24, 2008); Conopco, 95 F.3d at 191. "For claims brought more than six years after plaintiff had knowledge of infringement, a presumption of laches arises and the trademark owner must show the inequity of dismissal." Excelled Sheepskin, 897 F.3d at 419; see also Haggar Int'l Corp. v. United Co. for Food Indus. Corp., 906 F. Supp. 2d 96, 135 (E.D.N.Y. 2012).

While it is true that barring an action on the basis of laches means "that some potentially meritorious demands will not be entertained" there is "justice too in an end to conflict and in the quiet of peace." Mahmood v. Rsch. in Motion Ltd., No. 11 CIV. 5345 KBF, 2012 WL 242836, at *7 (S.D.N.Y. Jan. 24, 2012) (quoting Envt'l Def. Fund v. Alexander, 614 F.2d 474 (5th Cir.), cert. denied, 449 U.S. 919, 101 S. Ct. 316, 66 L.Ed.2d 146 (1980)).

### ii. Plaintiff Had Knowledge of Defendant's Marks.

The first element, Plaintiff's knowledge of Defendant's marks, is irrefutably present here. The Second Circuit has held that "[a] trademark owner is chargeable with such knowledge as he might have obtained upon [due] inquiry." Black Diamond Sportswear, Inc., 2007 WL 2914452, at *3 ("noting that trademark owner has 'duty to police its rights against infringers'"). Here, Plaintiff has raised this action, claiming Defendant has used the "LEXINGTON" mark in infringing manner

6

since at least as early as *2012*. Indeed, in the Amended Complaint, Plaintiff alleges: "*[s]ince entering into the Settlement Agreement [in January 2012]*, *it has come to Lexington's attention* that LCC is using the LEXINGTON mark when advertising to consumers in the United States, in direct violation of the Settlement Agreement and Lexington's intellectual property rights." Amended Complaint, ¶ 16 (emphasis added); see also Dkt. 115, p. 2 ("Following seven years without litigation between the parties in the United States, LFI brought this action alleging trademark infringement and breach of the Settlement Agreement") (emphasis added). Indeed, any doubt is extinguished by the fact that, in the Joint Proposed Pre-Trial Order, Plaintiff itself claims damages in the form of "infringing sales . . . *from 2012* through February 2021." Dkt. 182, p. 3 (emphasis added). Accordingly, per Plaintiff's own words, it has been aware of Defendant's alleged infringing activity since 2012.

### iii. Plaintiff's Delay is Inexcusable.

Nevertheless, as this Court explained, "[f]ollowing seven years without litigation between the parties in the United States, [Plaintiff] LFI brought this action alleging trademark infringement and breach of the Settlement Agreement." (Dkt. 115, p. 2); see also Dkt 1; Amended Complaint. In other words, Plaintiff waited more than *seven years* to assert such trademark claims – well in excess of the six years analogous statute of limitations for the trademark infringement and unfair competition claims. See Conopco, Inc, 95 F.3d at 191; Saratoga, 625 F.2d at 1040. Plaintiff cannot overcome the presumption triggered by its seven year delay, since it has not and cannot offer any explanation for its delay and certainly not an excusable one. Indeed, Plaintiff has offered no evidence to suggest that it was somehow prevented from asserting its rights prior to July 2019. Accordingly, Defendant is unquestionably entitled to the presumption that the doctrine of laches applies against Plaintiff's trademark infringement and unfair competition claims. Excelled

7

Sheepskin, 897 F.3d at 419; see also Conopco, 95 F.3d at 187 (upholding the defense of laches where plaintiff's delay in bringing suit was five years); Byron v. Chevrolet Motor Div. of Gen. Motors Corp., No. 93 CIV. 1116 (AJP), 1995 WL 465130, at *6 (S.D.N.Y. Aug. 7, 1995) (dismissing infringement claims where plaintiff failed to justify seven year delay in filing suit and defendants had been prejudiced as a result of such a delay); Eppendorf-Netheler-Hinz GmbH v. Enterton Co., 89 F. Supp. 2d 483, 487 (S.D.N.Y. 2000), aff'd sub nom., Eppendorf-Netheler-Hinz GMBH v. Nat'l Sci. Supply Co., 14 F. App'x 102 (2d Cir. 2001) (dismissing trademark infringement claim based on laches as Plaintiff could not excuse the delay of eight years in filing the subject action and defendants would have been unfairly prejudiced if plaintiff were permitted to proceed with the untimely claim); Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y, a division of Merkos L'Inyonei Chinuch, Inc., 697 F. App'x 63, 64 (2d Cir. 2017) (noting that the defendant was "entitled to a presumption that laches applies" where the plaintiff waited "a minimum of sixteen years" after learning of the allegedly offensive use of its mark to bring suit). As such, the burden is on Plaintiff to establish laches should not apply to these claims.

      **iv. Defendant Has Been Prejudiced As A Result of Plaintiff's Seven Year Delay in Filing Suit.**

As to the third and final element, because Plaintiff sued only after the analogous statutes of limitations expired, Defendant presumptively has been prejudiced by Plaintiff's delay. Excelled Sheepskin, 897 F.3d at 419.

Even apart from the presumption, there is no question that Plaintiff's delay has caused undue prejudice to Defendant. Where the plaintiff has no excuse for the delay, as here, a defendant needs only to show little prejudice. Larios v. Victory Carriers, Inc., 316 F.2d 63, 67 (2d Cir. 1963); Byron, 1995 WL 465130, at *7. Prejudice ensues when a "defendant has changed his position in a

8

way that would not have occurred if the plaintiff had not delayed." <u>Conopco</u>, 95 F.3d at 192. Defendant can make a strong showing that it was prejudiced by Plaintiff's failure to sue until 2019.

Indeed, following a dispute dating back to 2007, the parties negotiated and entered into a Settlement Agreement dated January 12, 2012, to outline the terms of their coexistence in the United States and to avoid any further disputes. <u>See</u> DX-30. Relying upon the terms of coexistence, Defendant invested extensive time and resources into aligning its marketing and advertising efforts to comply with the Settlement Agreement. Defendant also expended a substantial amount to develop its brand and reputation in the United States in accordance with the parameters set forth in the Settlement Agreement. <u>See</u> <u>Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Quest De La France</u>, 245 F.3d 1359, 1363 (Fed. Cir. 2001) ("Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice."); <u>see also</u> 6 McCarthy on Trademarks §31:12 ("Expectation prejudice encompasses actions by the defendant or actions that it would not have taken or consequences it would not have suffered had the plaintiff brought suit promptly.").

Prior to the events culminating in this litigation, Plaintiff reached out to Defendant a total of *two times* since the Settlement Agreement was executed in 2012. The first instance was a letter from Plaintiff dated December 20, 2013, in which Plaintiff alleged Defendant had violated the terms of the Settlement Agreement. <u>See</u> DX-73, at pp. 1-6. Defendant responded that it had not, in fact, violated the Settlement Agreement and laid out its reasoning for Plaintiff. <u>Id.</u>, at pp. 7-8. Plaintiff *never* replied. The second instance was a letter from Plaintiff dated July 18, 2014, in which Plaintiff objected to certain marketing by Defendant. <u>Id.</u>, at pp. 9-11. Defendant responded rejecting the suggestion that it had violated the Settlement Agreement. <u>Id.</u>, at pp. 12-13. Again,

9

Plaintiff ***never*** replied. In each instance, when Plaintiff never replied, Defendant justifiably assumed that any pending dispute had been resolved. See Byron, 1995 WL 465130, at *9 ("[P]rejudice can be evidenced where a defendant has been lulled into a 'false sense of security' by plaintiff's delay") (finding the defendant justifiably relied upon the lack of response following a cease and desist letter) (citation omitted). Instead, Plaintiff waited over ***seven years*** to raise this litigation, claiming alleged infringement by Defendant ***since 2012***. If Plaintiff had commenced a lawsuit back in 2013 or 2014 – or even followed up on its letters – any alleged issue could have been resolved at that time. Assuming any alleged issues were resolved, Defendant continued to proceed with the same marketing and advertising in the United States throughout the years. Thus, Defendant was "lulled into a false sense of security" by Plaintiff's inactivity – so much so that it would now prejudice it to be sued. Id. It is indisputable that Defendant has been prejudiced by Plaintiff's lengthy delay in bringing suit.

\* \* \* \* \* \* \* \*

Based on the foregoing, the doctrine of laches warrants that Plaintiff's trademark infringement and unfair competition claims be barred in their entireties. See Deere, 2004 WL 324890, at *21 (holding that plaintiff is barred by laches from asserting certain trademark infringement and unfair competition claims); Conopco., 95 F.3d 187 (upholding the defense of laches where plaintiff's delay in bringing suit was five years); Eppendorf-Netheler-Hinz, 89 F. Supp. 2d at 487 (dismissing trademark infringement claim based on laches as Plaintiff could not excuse the delay of eight years in filing the subject action and defendants would have been unfairly prejudiced if plaintiff were permitted to proceed with the untimely claim); Brown v. Sixteen, Inc., No. 02 CIV. 4630 (DAB), 2009 WL 1159161, at *7 (S.D.N.Y. Apr. 28, 2009), aff'd sub nom.. Brown v. Quiniou, 467 F. App'x 13 (2d Cir. 2012) (holding plaintiff's suit for trademark

10

infringement barred by the doctrine of laches because the plaintiff had knowledge of defendant's mark, was inexcusably delayed in filing suit and that the defendant was prejudiced by such an unreasonable delay); Manganaro, 2002 WL 1560789, at *7 (holding the doctrine of laches barred plaintiff's trademark infringement claim).

## V.   CONCLUSION

Based on the foregoing, LCC respectfully requests that the Court grant its motion for judgment as a matter of law in Defendant's favor as to Counts I, II, VII and VIII of the Amended Complaint.

| | |
|---|---|
| Dated: New York, New York<br>June 30, 2022 | Respectfully submitted,<br><br>**BLANK ROME LLP**<br><br>*/s/ Timothy D. Pecsenye*<br>Timothy D. Pecsenye (*Pro Hac Vice*)<br>Blank Rome LLP<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, PA 19103<br>Phone: (215) 569-5500<br>Email: Pecsenye@BlankRome.com<br><br>Craig M. Flanders<br>Blank Rome, LLP<br>1271 Avenue of Americas<br>New York, NY 10020<br>Phone: 212-885-5000<br>Email: CFlanders@BlankRome.com<br><br>*Attorneys for The Lexington Company AB d/b/a The Lexington Clothing Company* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, the foregoing was electronically filed through the Court's CM/ECF system and thereby served on the following recipients:

**Michael Lawrence Simes**
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-7013
Fax: 212-715-6260
Email: msimes@mcguirewoods.com

**Lucy Jewett Wheatley**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
lwheatley@mcguirewoods.com

**Amanda L. DeFord**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
adeford@mcguirewoods.com

**Matthew W. Cornelia**
McGuire Woods LLP
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
mcornelia@mcguirewoods.com

*Counsel for Plaintiff Lexington Furniture Industries, Inc. d/b/a Lexington Home Brands*

By: */s/ Timothy D. Pecsenye*
Timothy D. Pecsenye

137387.00601/126658308v.4