IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEXINGTON FURNITURE INDUSTRIES, INC. d/b/a LEXINGTON HOME BRANDS,<br><br>*Plaintiff*,<br><br>v.<br><br>THE LEXINGTON COMPANY, AB d/b/a THE LEXINGTON CLOTHING COMPANY,<br>*Defendant*. | Civil Action No.: 1:19-cv-06239-PKC |

**DEFENDANT THE LEXINGTON COMPANY, AB DBA THE LEXINGTON CLOTHING COMPANY'S REPLY BRIEF IN SUPPORT OF ITS <u>MOTION TO ALTER OR AMEND JUDGMENT</u>**

Dated: New York, New York
      July 21, 2022

**BLANK ROME LLP**

Timothy D. Pecsenye (*Pro Hac Vice*)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Email: <u>Pecsenye@BlankRome.com</u>

Craig M. Flanders
Blank Rome, LLP
1271 Avenue of Americas
New York, NY 10020
Phone: 212-885-5000
Email: <u>CFlanders@BlankRome.com</u>

*Attorneys for The Lexington Company, AB d/b/a The Lexington Clothing Company*

i

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................................1

II.  ARGUMENT ........................................................................................................................1

    A.  Disgorgement Is an Equitable Remedy Reserved for the Court. ........................... 1

    B.  The Jury's Disgorgement and Punitive Damages Awards Should Be Altered. ..... 3

        *i.   Disgorgement of Profits is Improper in this Case.* ................................................. *3*

        *ii.  Alternatively, the Disgorgement Award Should be Adjusted.* .............................. *4*

        *iii. Any Disgorgement Award Should Exclude Profits Prior to 2017.* ........................ *6*

    C.  Plaintiff Relies on Improper Authority for its Argument on Punitive Damages .. 6

    D.  The Evidence at Trial Fails to Support a Finding of Likelihood of Confusion..... 7

        *i.   LFI Marks Are Weak and Descriptive and Lack Secondary Meaning.* ................. *7*

        *ii.  Marks Are Not Similar.* ........................................................................................ *9*

        *iii. Products Are Not Proximate; No Evidence of Bridging the Gap.* ........................ *9*

        *iv.  No Evidence of Actual Confusion.* ..................................................................... *10*

        *v.   No Evidence of Bad Faith.* ................................................................................. *10*

III. CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

20th Century Wear Inc., v. Sanmark-Stardust Inc., 747 F.2d 81, 90 (2d Cir. 1984) ...................... 8

Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) ................................................................................................ 8

Broadnax v. City of New Haven, 415 F.3d 265, 271 (2d. Cir.2005) ................................................ 2

Car Freshener Corp. v. Am. Covers, LLC, 419 F. Supp. 3d 407, 442 (N.D.N.Y. 2019) ............. 10

Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH, No. 14-CV-585 (AJN), 2018 WL 4253181, at *17 (S.D.N.Y. Sept. 5, 2018) .............................................................................. 3

Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) .......................................................................... 2

DeFelice v. American Int'l Life Assur., 112 F.3d 61, 65 (2d Cir. 1997) ....................................... 3

Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 642 F. Supp. 2d 276, 286 (S.D.N.Y. 2009) ............................................................................................................................. 4

Franklin Res., Inc. v. Franklin Credit Mgmt. Corp., 988 F. Supp. 322, 328 (S.D.N.Y. 1997) ....... 9

Getty Petroleum Corp. v. Island Transp. Corp. 878 F.2d 650, 657 (2d Cir. 1989) ....................... 7

Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 132 (2d Cir. 2014) .................................... 1, 2, 3, 4

Hamil Am. Inc. v. GFI, 193 F.3d 92, 105 (2d Cir. 1999) ............................................................... 5

Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1359 (11th Cir. 2019) ...... 1, 2

Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991) ................................................ 10

Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir.2004) .................................... 1, 4, 5, 7

Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 96 (2d Cir. 2020) .................................. 7

Tiffany and Co. v. Costco Wholesale Corp., No. 13 CV 1041-LTS-DCF, 2019 WL 120765, at *6 (S.D.N.Y. Jan. 7, 2019) .................................................................................................................. 7

Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 745-46 (S.D.N.Y. 1997) ............................................................................................................................. 9

Defendant The Lexington Company, AB d/b/a The Lexington Clothing Company ("LCC" or "Defendant") submits this Reply in further support of its Motion to Alter or Amend Judgment ("Motion") and in response to the Opposition ("Opposition") filed by Plaintiff Lexington Furniture Industries, Inc. d/b/a Lexington Home Brands ("LFI" or "Plaintiff").

## I. PRELIMINARY STATEMENT

Plaintiff's Opposition does nothing to overcome the fundamental defects plaguing the jury's verdict. Rather, Plaintiff conspicuously sidesteps the key arguments in LCC's Motion by confusing the relevant issues and harping on irrelevant facts. The record shows three critical issues that must be remedied to "correct a clear error of law or prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir.2004). *First*, the jury's disgorgement award of $1,641,963 is unsupported by the evidence presented at trial because LCC never made a profit in the U.S. – in fact, LCC lost millions of dollars before ultimately closing its retail locations in the U.S. *Second*, LFI is not entitled to the jury award for punitive damages under New York law because LFI failed to seek compensatory damages. *Third*, there was no evidence or testimony at trial even suggesting a plausible likelihood of confusion. For the reasons set forth herein, as well as in its Motion, LCC respectfully requests this Court to alter or amend the judgment to strike or proportionally reduce the damages award, strike the punitive damages award, and strike the jury's findings as to the Lanham Act and related claims.

## II. ARGUMENT

### A. Disgorgement Is an Equitable Remedy Reserved for the Court.

Plaintiff's position that disgorgement is not an equitable issue unequivocally flies in the face of black letter law. See Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 132 (2d Cir. 2014); Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1359 (11th Cir. 2019) ("...[D]isgorgement of a defendant's profits in a trademark infringement case is equitable in nature and does not carry with it a right to a jury trial"). Equally confounding is Plaintiff's bold

1

assertion that LCC "waived any argument that the [disgorgement] verdict is advisory." See Opp., p. 2. Plaintiff fails to cite any authority in its Opposition which precludes LCC from exercising its equitable right. Indeed, Plaintiff's *only* support for such a baseless contention is a labor and employment case about lost wages, which is irrelevant to the case at hand. See Broadnax v. City of New Haven, 415 F.3d 265, 271 (2d. Cir.2005). Moreover, every case cited within the Broadnax case for the asserted proposition are also wage cases, *none* of which are remotely relevant to the issue of trademark infringement and disgorgement of profits. See id. Plaintiff cannot escape the fact that, as a matter of law, disgorgement remains an equitable issue reserved for the Court.[1]

Plaintiff also conflates the issue at hand by arguing that it was entitled to a jury trial on both infringement and damages. To be clear, LCC did not - and does not - dispute that it consented to the issue of trademark infringement being tried by a jury. However, as is the case here, where a plaintiff seeks solely disgorgement in a trademark infringement action, determination of the *disgorgement amount* is a question ultimately decided by the Court. Gucci Am., Inc., 768 F.3d at 132; see also Hard Candy, LLC., 921 F.3d at 1359; Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A. Inc., 778 F.3d 1059, 1075 (9th Cir. 2015).[2] Plaintiff primarily relies on the Court's ruling in Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) for its position that it was entitled to a jury trial on both disgorgement and infringement. (Opposition, p. 3). Yet, the Second Circuit clarified the holding in Dairy Queen, explaining that such entitlement does *not* extend to disgorgement:

> Plaintiffs in Dairy Queen did not seek an award of profits, but amounts owed under a contract and *damages* for trademark infringement. The Court concluded that both an action for debt due under a contract and an action for damages based upon a charge of trademark infringement are legal claims. In contrast here, plaintiffs ask for an award of the defendant's *profits*. And there is no basis to conclude that the

---

[1] See also Fed. R. Civ. P. 39(a)(2) (providing the court has the power to "act on its own" and find that there is no federal right to a jury trial).

[2] "A jury demand may be stricken without any consideration of prejudice when no right to a jury exists because only equitable relief is sought." 9 Fed. Prac. & Proc. Civ. § 2333 (4th ed.); see also FN Herstal SA v. Clyde Armory Inc., 838 F.3d 1071, 1089 (11th Cir. 2016) ("[N]othing in Rule 39 restrains a party from withdrawing its consent to a jury trial that is not as of right.").

> equitable character of such relief . . . is affected by the Court's treatment of the *legal* forms of monetary relief at issue in Dairy Queen.

Gucci, 768 F.3d at 133 (emphasis in original) (internal citations omitted). The other cases on which Plaintiff relies that permitted a jury trial on the issue of disgorgement (Opposition, p. 4) all predate Gucci, and therefore should be given no weight. The Court should follow Gucci in treating the jury's verdict as to disgorgement as advisory, recognizing that it is an equitable remedy.

Accordingly, the ultimate determination as to a disgorgement of profits rests with the Court, *not* jury. DeFelice v. American Int'l Life Assur., 112 F.3d 61, 65 (2d Cir. 1997) (explaining that the Court should "its own factual findings and conclusions, in reliance upon the advisory jury's verdict if the court so chooses, and . . . explain how it arrived at those findings and conclusions.").

### B. The Jury's Disgorgement and Punitive Damages Awards Should Be Altered.

#### i. Disgorgement of Profits is Improper in this Case.

Plaintiff's Opposition failed to establish disgorgement of profits is appropriate in this case. "The Second Circuit has noted that disgorgement is 'rarely granted' and generally is 'limited to situations in which the defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff.'" Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH, No. 14-CV-585 (AJN), 2018 WL 4253181, at *17 (S.D.N.Y. Sept. 5, 2018). The trial record established that LCC did *not* earn any profit during the time period in question, and in fact had a loss of $4 million, thereby invalidating any grounds for a recovery of damages.[3] See Day 2 Tr. at 185:5-9; see also Plaintiff's Ex. PX-PG.

---

[3] Plaintiff boldly claims the damages amount was "already significantly discounted by LCC's failure to provide" financial information for the period of November 2021 through the trial date. This claim is baseless on two accounts. First, Plaintiff never requested updated figures and never provided updated figures from its own sales as well. See PX-LL, PX-PH, PX-PI. Second, by November 2021, there were no clothing or home sales in the U.S. (just Webshop and Other), leaving a small income that generated over the following few months (if any). See Trial Exhibit PX-PG. As such, any suggestion by Plaintiff that the damages amount was "significantly discounted" is entirely false.

3

Notably, Plaintiff wholly conflates LCC's discussion on willfulness. LCC does not discuss willfulness as a prerequisite to recovery of a disgorgement award.[4] See Motion, pp. 6-7. Rather, LCC merely clarifies that a finding of willfulness does not prevent a defendant from offsetting indirect expenses against gross sales in evaluating an award of disgorgement. See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 642 F. Supp. 2d 276, 286 (S.D.N.Y. 2009).

Plaintiff then attempts to avoid the substantive issue at hand by claiming that LCC is improperly "relitigate[ing] this issue." Opp., pp. 7-8. To the contrary, LCC is well within its rights in arguing that the disgorgement award by the jury should be altered "to correct a clear error of law or prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir.2004) (internal citation omitted). This point is further bolstered by the fact that the ultimate determination of a disgorgement award is in the purview of the Court, not jury. Gucci Am., Inc., 768 F.3d at 132.

Finally, Plaintiff's assertion that LCC's "lack of profitability does not warrant altering the jury's damages award" is entirely meritless. Opp., p. 8. The purpose of disgorgement is to allow a wronged plaintiff to recover, *inter alia*, defendant's profits. 15 U.S.C. § 1117(a). It is logical then that if a defendant made no profits – as is the case here – a disgorgement award is not merited. Plaintiff's insistence that profitability should be analyzed based on LCC's business *worldwide* is nothing more than a strawman argument that runs wholly contrary to the principles of trademark law. It goes without saying that the only relevant scope is strictly limited to LCC's profitability in the U.S. Indeed, such a ludicrous suggestion should be given no credence.

    **ii.**    **Alternatively, the Disgorgement Award Should be Adjusted.**

---

[4] LCC further notes that Plaintiff did not present "significant evidence" of actual confusion in this case given that all such instances were merely hearsay, no individual purchased the wrong product, and even Mr. Stamper contradicted his own story about interior designer confusion given that he confirmed such designers are highly sophisticated and can easily identify Plaintiff's products. Day 3 Tr. at 508:16-509:20.

Plaintiff's Opposition also fails to establish that, in the alternative, the disgorgement award should not be proportionally reduced. Initially, Plaintiff conflates the relevant disgorgement standard by claiming that costs can only be deducted from the award solely to the extent "'each category [of costs] is directly and validly connected to the sale and production of the infringing product' by a '***strong*** nexus.'" Opp., p. 10 (citations omitted). The relevant standard for deducting costs requires a determination of whether there is "a ***sufficient*** nexus . . . between a category of overhead and the production or sale of the infringing product." Hamil Am. Inc. v. GFI, 193 F.3d 92, 105 (2d Cir. 1999); see also Day 4 Tr. at 626:2-4. As discussed infra, a finding of willfulness was not warranted in this case, meaning the appropriate standard remains a "sufficient nexus" and not a "strong nexus."

Furthermore, Plaintiff is entirely false in asserting that LCC never disclosed its theory of damages previously. At trial, LCC argued that its costs must be deducted from the percentage of alleged infringing sales – indeed, not doing so would have been contrary to the disgorgement of profits standard.[5] LCC even argued for a formula based on a pro rata deduction of costs. See Day 3 Tr. at 544:16-545:23.[6] LCC also argued that certain overhead costs are impossible to separate between the two categories and, as such, they should be included as overhead costs. See Id. at 538:21-540:12.

Finally, as to Plaintiff's assertion that LCC's "Webshop" and "other" sales should have been included in LCC's proposed formula, the trial testimony confirmed that it was unclear whether any home goods were ever purchased through "Webshop" sales and that "other" sales is

---

[5] See Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 407 (2d Cir.1989) (holding under analogous circumstances in a copyright infringement action, "where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard, it is the duty of the court to make some apportionment") (quoting Orgel v. Clark Boardman Co., 301 F.2d 119, 121 (2d Cir.)).

[6] Contrary to Plaintiff's repeated assertion that LCC's arguments are untimely, LCC reiterates that it is well within its rights to request that the disgorgement award be altered "to correct a clear error of law or prevent manifest injustice." Munafo, 381 F.3d at 105.

comprised mainly of products such as books, posters, and other things not categorized as home or apparel products. See PX-PG; see also Day 1 Tr. at 126:22-25; 127:20-128:2.

Thus, should the Court find disgorgement is an appropriate remedy, LCC requests the Court to alter the judgment and amend the award as proposed in LCC's formula. Motion, p. 9.

### iii. Any Disgorgement Award Should Exclude Profits Prior to 2017.

Recognizing the critical flaw in its timeline, Plaintiff now desperately attempts to patch together unfounded instances of infringement dating prior to 2017. Yet, Plaintiff conceded at trial that "the earliest piece of evidence we have is 2015 . . ." (Day 2 T. 374:19-23). Despite this concession and a lack of evidence, Plaintiff now argues the alleged infringement commenced back in 2012. (Opp., pp. 12-13). Initially, the mere fact that LCC opened stores in 2012 in the U.S. does not translate into infringement commencing as of that date. Moreover, Mr. Lindhe's testimony that LCC used the marks LEXINGTON or LEXINGTON COMPANY *in stores* again does not equate to infringement. The Settlement Agreement required that the outside of U.S. stores bear the LEXINGTON CLOTHING CO. mark, which it did. See DX-69. The Settlement Agreement did *not* prohibit or limit use of any LEXINGTON-formative marks inside the store that were not on home goods (e.g., clothing products or consumer shopping bags). See PX-AC. Moreover, the only evidence provided is a handful of social media posts, which falls short of establishing any likelihood of confusion, let alone dating back further than 2017.[7] See PX-BO. Indeed, Plaintiff has offered *no* evidence of any actual confusion dating prior to 2017. Thus, without any evidence of infringement dating prior to 2017, LCC's profits earned during such years should be excluded from any disgorgement calculation. See PX-PG.

### C. Plaintiff Relies on Improper Authority for its Argument on Punitive Damages.

---

[7] In addition, the social media posts highlighted by Plaintiff are outside the scope of the Settlement Agreement but, even if considered within the scope, they all either include LEXINGTON CLOTHING CO., the flag logo, images of non-home good products and/or links to the U.S. targeted website (which clearly includes the LEXINGTON CLOTHING CO. name).

6

Plaintiff erroneously conflates the availability of punitive damages – i.e., the legal prerequisite by which punitive damages are available under New York law – with the standard by which they are awarded. The Getty Petroleum Corp. v. Island Transp. Corp "wanton, or willful" conduct standard is irrelevant to the legal prerequisite that a plaintiff be first awarded compensatory damages under New York law before punitive damages can be awarded. 878 F.2d 650, 657 (2d Cir. 1989) (citations omitted). Furthermore, Plaintiff cites to Tiffany and Co. v. Costco Wholesale Corp., No. 13 CV 1041-LTS-DCF, 2019 WL 120765, at *6 (S.D.N.Y. Jan. 7, 2019) as support for the contention that punitive damages are available where plaintiff seeks an accounting of profits. However, Plaintiff cannot rely on this holding to assert its position because on appeal, the Second Circuit completely vacated the judgment finding that the liability holding was erroneous and thus the Second Circuit could not properly reach the issue of punitive damages. Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 96 (2d Cir. 2020).

### D. The Evidence at Trial Fails to Support a Finding of Likelihood of Confusion.[8]

#### i. LFI Marks Are Weak and Descriptive and Lack Secondary Meaning.

Plaintiff has not – and cannot – overcome the fact that the LFI Marks are unequivocally weak marks: (i) they are geographically descriptive; (ii) they have not acquired distinctiveness; (iii) they are not the primary identifiers of Plaintiff's products; and (iv) there are numerous third-party marks that incorporate the term LEXINGTON.

First, Plaintiff has irrefutably conceded that Lexington, North Carolina is where Plaintiff's company originated and is still the location of its distribution and manufacturing facility. See Day 3 Tr. at 465:21–466:8. Plaintiff's attempt to deflect by emphasizing that a mark is only

---

[8] Contrary to LFI's assertion that a Rule 59(e) motion is not the appropriate tool through which to challenge the jury's likelihood of confusion finding, LCC notes it is well within its rights to request that the finding be altered "to correct a clear error of law or prevent manifest injustice." Munafo, 381 F.3d at 105.

geographically descriptive if "*the place identified is generally known to the public, and if the public would make the place/goods association*" is entirely meritless as Plaintiff already conceded that Lexington is the epicenter of the U.S. furniture industry. Id. Indeed, Plaintiff explained the company is named Lexington *because* it was founded in the city of Lexington, North Carolina. Id., at 463:21–464:22. Also, Plaintiff cannot escape the fact that the trial record clearly establishes it conceded to the descriptiveness of the term LEXINGTON when it asserted a claim of acquired distinctiveness in connection its U.S. Reg. No. 4379049 for the mark LEXINGTON. See PX-B.

Second, Plaintiff's Opposition fails because the LFI Marks are not distinctive marks (i.e., acquired secondary meaning). Plaintiff continues to conflate the issue at hand by focusing on its trademark registrations. However, it is black letter law that a registration alone does *not* support the conclusion that the LFI Marks are strong and need not show acquired distinctiveness. See Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018). "[A] registered mark may still be deemed weak." Id. Plaintiff's general assertion that it provided evidence of investments, advertising, and media coverage fail to satisfy the "heavy" burden of proving its mark acquired secondary meaning. 20th Century Wear Inc., v. Sanmark-Stardust Inc., 747 F.2d 81, 90 (2d Cir. 1984).

Third, the trial record established that consumers did not generally associate products sold by Plaintiff as originating from Plaintiff. Rather, Plaintiff conceded that it sells most of its goods under collection and licensed brand names (e.g., Tommy Bahama), which is the brand that consumers have come to recognize as the source of such goods.[9] See Day 3 Tr. at 469:4-12. In addition, the most revealing evidence was the fact that, up to the date of trial, the only evidence of a "home good" bearing the LEXINGTON mark that Plaintiff had produced in this case was *a*

---

[9] Plaintiff harps on comments from Mr. Stamper that allegedly consumers recognize these products to emanate from Lexington, yet this was wholly contradictory to Mr. Stamper's 30(b)(6) deposition testimony and, without any evidence of consumer recognition (e.g., survey), can only be considered with a grain of salt as self-serving statements by the Plaintiff's representative.

*photograph of one single pillow*. See PX-L. This cannot be emphasized enough. The other home goods that suddenly appeared at trial have no impact on whether the LEXINGTON mark had acquired distinctiveness as of the alleged date the infringement commenced.[10]

Finally, despite Plaintiff's suggestion otherwise, the evidence showing third party uses of LEXINGTON indisputably underscores the fact that the term LEXINGTON is a weak mark. See Franklin Res., Inc. v. Franklin Credit Mgmt. Corp., 988 F. Supp. 322, 328 (S.D.N.Y. 1997).

> ii.  **Marks Are Not Similar.**

With respect to the similarity of marks, Plaintiff improperly harps on the mere fact that the respective marks each contain the term "LEXINGTON". However, the significant distinctions between the respective marks, when properly viewed in their entireties are more than adequate to distinguish the marks in the eyes of relevant consumers. Indeed, LCC's Flag Design ( ) is unequivocally distinguishable from Plaintiff's stylized marks (LEXINGTON or LEXINGTON HOME BRANDS). See Trustees of Columbia Univ. v. Columbia HCA Healthcare Corp., 964 F. Supp. 733, 745-46 (explaining that marks become more distinguishable when used in conjunction with distinctive logos and such logos decrease the likelihood of confusion). Plaintiff cannot dispute that all the evidence cited in its Opposition clearly displays LCC's Flag Design, thereby eliminating any possibility of confusion.[11]

> iii.  **Products Are Not Proximate; No Evidence of Bridging the Gap.**

The simple fact is that the parties are *not* competitors. Plaintiff conceded that LCC is not a competitor and LCC conceded that Plaintiff is a not competitor. Day 2 Tr. at 222:10-25; Day 3 Tr.

---

[10] See Easy Spirit, LLC v. Skechers U.S.A., Inc., 515 F. Supp. 3d 47, 61 (S.D.N.Y. 2021) (""A 'plaintiff bears the burden of proving that his mark acquired secondary meaning by the time the allegedly infringing product came on the market.'").

[11] It is also telling that Plaintiff failed to conduct any consumer survey on the likelihood of confusion. Day 3 Tr. at 468:15-23; see also The Sports Auth., Inc., 89 F.3d at 964. Of course, any such survey would readily confirm that there is no such likelihood of confusion among relevant consumers.

at 494:11 – 495:13. The bulk of both parties' businesses operate in distinct markets (i.e., furniture vs. apparel) and, as established in trial, pillows and bedding comprise no more than only a *miniscule fraction* of Plaintiff's annual sales. See Day 3 Tr. at 504:4 - 505:3.

### iv. No Evidence of Actual Confusion.

Plaintiff's Opposition fails to overcome the fact that it introduced **no** consumer surveys or studies evidencing consumer confusion. Day 3 Tr. at 468:15-23. Instead, Plaintiff relies solely on alleged hearsay statements by unidentified individuals. The few anecdotal statements Plaintiff can muster were from interested witnesses and third parties, including its own employees and brand managers. "Those executives are not consumers, however." Car Freshener Corp. v. Am. Covers, LLC, 419 F. Supp. 3d 407, 442 (N.D.N.Y. 2019). Significantly, there is **no** evidence such alleged instances caused any lost sales, damage to Plaintiff's goodwill, or loss of reputation. Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991). At best, even if the few hearsay statements did constitute actual confusion, a few instances over a ten-year period are clearly *de minimis*.

### v. No Evidence of Bad Faith.

There is no evidence of bad faith in this case. LCC entered into the Settlement Agreement upon entering the U.S. market and believed it was complying with the terms over the past 10 years. In the handful of times that Plaintiff reached out to LCC, LCC responded immediately. The lack of any further response from Plaintiff reasonably indicated to LCC that any issues had been resolved. As such, there is no evidence in the trial record that LCC adopted the LCC Marks with the intent to trade on the LFI Marks or tread into the field of furniture.

\*     \*     \*     \*     \*

Thus, the jury's finding of a likelihood of confusion is not supported by the trial record or law. LCC respectfully requests this Court to strike the jury's findings as to the Lanham Act claims.

### III. CONCLUSION

Based on the foregoing, LCC respectfully requests that the Court grant its Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

| | |
|---|---|
| Dated: New York, New York<br>July 21, 2022 | Respectfully submitted,<br><br>**BLANK ROME LLP**<br><br>*/s/ Timothy D. Pecsenye*<br>Timothy D. Pecsenye (*Pro Hac Vice*)<br>Blank Rome LLP<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, PA 19103<br>Phone: (215) 569-5500<br>Email: Pecsenye@BlankRome.com<br><br>Craig M. Flanders<br>Blank Rome, LLP<br>1271 Avenue of Americas<br>New York, NY 10020<br>Phone: 212-885-5000<br>Email: CFlanders@BlankRome.com<br><br>*Attorneys for The Lexington Company, AB d/b/a The Lexington Clothing Company* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2022, the foregoing was electronically filed through the Court's CM/ECF system and thereby served on the following recipients:

**Michael Lawrence Simes**
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-7013
Fax: 212-715-6260
Email: msimes@mcguirewoods.com

**Lucy Jewett Wheatley**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
lwheatley@mcguirewoods.com

**Amanda L. DeFord**
McGuire Woods LLP
800 East Canal Street, Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
adeford@mcguirewoods.com

**Matthew W. Cornelia**
McGuire Woods LLP
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
mcornelia@mcguirewoods.com

*Counsel for Plaintiff Lexington Furniture Industries, Inc. d/b/a Lexington Home Brands*

By: */s/ Timothy D. Pecsenye*
Timothy D. Pecsenye