UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEXINGTON FURNITURE INDUSTRIES, INC.
d/b/a LEXINGTON HOME BRANDS,

               Plaintiff,                       19-cv-6239 (PKC)

      -against-                             OPINION
                                           AND ORDER

THE LEXINGTON COMPANY, AB d/b/a THE
LEXINGTON CLOTHING COMPANY,

               Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiff Lexington Furniture Industries, Inc. ("LFI") brought this action against

defendant The Lexington Company, AB ("LCC") asserting Lanham Act and state statutory and

common law claims.  The action is part of an approximately fifteen-year dispute between the

parties regarding the use of certain trademarks.  After an extensive discovery period and

energetic motion practice, this action was tried before a jury from May 26, 2022, to June 2, 2022,

on the Lanham Act claim, state law unfair competition claim and breach of contract claim.  The

jury returned a verdict finding in favor of LFI on all its claims, including that LCC's

infringement was willful.  It awarded LFI damages: $1,641,963 in disgorgement of profits on the

Lanham Act claim, $925,000 in punitive damages on the state common law claim and one dollar

in nominal damages on the breach of contract claim.  (Doc 212.)

            Now the parties bring post-trial motions.  LCC moves for (i) entry of judgment as

a matter of law in favor of LCC dismissing all of LFI's claims, pursuant to Rule 50(a), Fed. R.

Civ. P.; and (ii) an alteration or amendment of the judgment awarded in favor of LCI, pursuant to

Rule 59(e), Fed. R. Civ. P.  For its part, LFI opposes LCC's motions and brings its own motions

for (i) a permanent injunction enjoining further trademark infringement by LCC; (ii) taxable

costs; and (iii) non-taxable costs and attorneys' fees.  For reasons to be explained, LCC's

motions for judgment as a matter of law and to alter the judgment will be denied.  LFI's motion

for a permanent injunction will be granted.  The Court will address LFI's motion for attorneys'

fees and costs in a later opinion and order.

   The Court assumes familiarity with the procedural history of the action as

recounted in its Opinion and Order on the pre-trial summary judgment motions.  <u>Lexington

Furniture Indus., Inc. v. Lexington Co., AB</u>, No. 19-cv-6239, 2021 WL 1146276 (S.D.N.Y. Mar.

23, 2021).


I.  <u>LCC'S MOTION FOR JUDGMENT AS A MATTER OF LAW WILL BE DENIED.</u>

   LCC renews its motion for judgment as a matter of law dismissing all claims

asserted by LFI, pursuant to Rule 50(a), Fed. R. Civ. P.  The three claims that proceeded to trial

were a Lanham Act claim for trademark infringement, a state common law claim for unfair

competition,[1] and a breach of contract claim premised upon a prior settlement agreement

between the parties.  LCC urges that the doctrine of laches bars LFI's claims.  In a separate

motion to amend or modify the judgment, it also urges that there was insufficient evidence to

support a finding of likelihood of confusion.  Though nominally asserted by LCC under Rule

59(e), Fed. R. Civ. P., the Court considers this argument as if made under Rule 50(a).

   A court may only grant a motion for judgment as a matter of law "if there exists

such a complete absence of evidence supporting the verdict that the jury's findings could only

have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so

---

[1] The claim was pled as two claims for common law unfair competition and common law trademark infringement.  On the facts of this case, they were treated by the parties as essentially one claim that mirrored the elements of the Lanham Act claim.  (May 27, 2022 Tr. at 175-76.)

overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (quoting Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997)) (internal quotations omitted) (alterations in original).  "Under Rule 50, judgment as matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party . . . .  [A] court may properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."  Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998) (quoting Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir. 1993)) (internal quotations and citations omitted).  "In ruling on a motion for judgment as a matter of law, [a court] must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor."  Id. at 120-121 (internal quotations omitted).

### A.  A Reasonable Jury Could Find a Likelihood of Confusion.

The Court will first address LCC's claim that the jury verdict must be vacated because the evidence at trial was insufficient as a matter of law to establish customer confusion. Viewing the trial evidence in a light most favorable to LFI and drawing all reasonable inferences in favor of LFI as is required on a motion for judgment as a matter of law, a reasonable jury could conclude that there was a likelihood of consumer confusion based on the trial evidence.

LCC appeals to the familiar factors set forth in Polaroid Corporation v. Polarad Electronics Corporation, 287 F.2d 492 (2d Cir. 1961), and argues that LFI failed to prove consumer confusion as a matter of law because (i) LFI's marks are weak, descriptive and lack

secondary meaning, (ii) LCC's marks are not similar to LFI's marks, (iii) LFI's products are not proximate to LCC's products, (iv) there was no evidence of actual confusion, (v) there was no evidence of LCC's bad faith, and (vi) the parties' products are of similar quality and are purchased by sophisticated consumers.

"The application of the Polaroid test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (quoting Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005)). The Polaroid test "is a fact-intensive inquiry that depends greatly on the particulars of each case." Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013). The Court reviews the evidence in support of the factors to the extent its sufficiency is challenged by LCC.

Strength of LFI's mark. LCC claims that the marks are geographically descriptive, lack secondary meaning, are not source-identifying, and are diluted from third-party registrations. Though LFI was founded in Lexington, North Carolina, (May 31, 2022 Tr. at 463-64), there was also testimony that Lexington, North Carolina is not famous for furniture, (id. at 465). LFI presented evidence of its advertising investments, unsolicited media coverage, and its use of the Lexington name in connection with its furniture business for over 100 years. (May 27, 2022 Tr. at 329-30; May 31, 2022 Tr. at 421-433.) There was testimony that consumers associated LFI's named collections with the general LFI or Lexington brand, (May 31, 2022 Tr. at 470, 476), and that "Lexington" is used as the primary source identifier on LFI's products and in its advertising, (May 27, 2022 Tr. at 253-54, 318-19, 338-40; May 31, 2022 Tr. at 406-12). Robert Stamper also testified that he was not worried about other third parties that use "Lexington" in connection with their products because, unlike LCC, those third parties were not

using "Lexington" in connection with the sale of furniture or home goods.  (May 31, 2022 Tr. at 483-84, 489, 492.)  While neither party offered into evidence any consumer survey regarding secondary meaning,[2] the jury could have reasonably concluded that LFI's marks are strong based on the totality of evidence presented.

Similarity of the Marks.  Both LFI and LCC use the word "Lexington" in their marks, including in LCC's flag logo.  And further evidence was presented that LCC has used the word "Lexington" on marks other than the flag logo.  (See, e.g., Pl. Exs. AF, DG, FI, FK, GQ.) It is far from unreasonable to conclude that the parties' marks are similar.

Proximity of the Products.  Tommy Lindhe testified that LCC sells home textiles, bedding, towels, pillows, and pillowcases, which directly compete with LFI's home goods offerings.  (May 26, 2022 Tr. at 58; May 27, 2022 Tr. at 196, 230-31, 279, 317, 330.)  LFI also presented evidence as to the close relationship between furniture and home textiles.  (May 26, 2022 Tr. at 61-62; May 27, 2022 Tr. at 253.)

Actual Confusion.  Three witnesses testified to instances of actual customer confusion.  Patricia Rogers testified that in fall 2019 two customers became frustrated after arriving at an LFI showroom that they had confused for an LCC store.  (May 27, 2022 Tr. at 320-21.)  Robert Stamper testified that in summer 2018 at a home goods exposition several designers told Stamper that they were not interested in purchasing LFI's products or visiting LFI's showroom because those designers had previously visited an LCC store and concluded that the offerings there – which they mistook for LFI's offerings – were "just not [their] look."  (May 27, 2022 Tr. at 364-67.)  And Tommy Lindhe testified that he was aware that Barclay Butera, a

---

[2] A consumer survey may serve as potent proof of the likelihood of confusion but is not required to make out a case under the Lanham Act. See Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 45 (2d Cir. 2016) (affirming in part the grant of a permanent injunction after a bench trial).

partner of LFI, "mixed up the two companies" when trying to tag LFI in an Instagram post. (May 26, 2022 Tr. at 111-12.)

Bad Faith. LCC knew of LFI's trademarks before entering the U.S. market. (May 26, 2022 Tr. at 67-68.) "Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." Star Indus., 412 F.3d at 389. There was also testimony that despite this knowledge, LCC continued to use infringing marks, including on its social media accounts that could be accessed by U.S. customers and on certain pillows that falsely claimed that LCC owned a registered trademark for the phrase "Lexington Company." (May 26, 2022 Tr. at 89-90; May 31, 2022 Tr. at 416-18.)

Quality of the Products and Sophistication of Consumers. The parties agree that their products are of similar quality and price and that their consumers are generally affluent, educated and sophisticated. This generally weighs in favor of LCC, as sophisticated consumers typically exercise great care when purchasing expensive products. Nevertheless, the Polaroid factors are considered in their totality and no one factor is determinative; the jury was free to weigh this factor against the other factors as it deemed appropriate.

Considering the totality of the evidence, a reasonable jury could conclude comfortably that LFI had proven a likelihood of consumer confusion. LCC has not met the high burden of showing that no reasonable jury could conclude that there was a likelihood of confusion based on the evidence presented at trial. Accordingly, LCC's motion for a judgment as a matter of law on this ground will be denied.

B. Laches Does Not Bar Any Claim.

LCC argues that LFI's claims are barred by the doctrine of laches. LFI asserts that the jury's finding that LCC's infringement was willful forecloses the defense and the Court

6

agrees.  The jury was instructed that the defendant's infringement "is 'willful' if (1) the defendant was actually aware of the infringing activity, or (2) the defendant's actions were the result of reckless disregard or willful blindness."  The jury expressly found that LCC's trademark infringement was "willful," (Doc 212 at 1), and that its conduct on the state common law claim warranted punitive damages, (Doc 212 at 2).  The evidence at trial was that prior to entering the U.S. market, LCC knew of LFI's trademarks.  (May 26, 2022 Tr. at 67-68.)  Indeed, LFI had succeeded in having LCC's trademark cancelled by the U.S. Patent and Trademark Office.  (Id. at 63-66.)  Before entering the U.S. market, LCC entered into a settlement with LFI restricting LCC's use of the Lexington name in certain circumstances.  (Id. at 63-68.)  This was the settlement agreement that the jury found LCC had breached.  (Doc 212 at 1.)

"It is well established that 'laches is not a defense against injunctive relief when the defendant intended the infringement.'"  Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000) (quoting Harlequin Enters. Ltd. v. Gulf & W. Corp., 644 F.2d 946, 950 (2d Cir. 1981)).  "This good-faith component of the laches doctrine is part of the fundamental principle that 'he who comes into equity must come with clean hands.'"  Id. (quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)).  District courts within this Circuit have repeatedly held that conduct amounting to willful infringement forecloses a laches defense.[3]  See I.O.B. Realty, Inc. v. Patsy's Brand, Inc., No. 16 Civ. 7682, 2017 WL 2168815, at *4 (S.D.N.Y. May 16, 2017) (declining to dismiss trademark infringement claim based upon allegations of willful infringement and bad faith); Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage, No. 08cv03157, 2008 WL 4974800, at *6 (S.D.N.Y. Nov. 24, 2008) (declining to dismiss based upon allegations of

[3] LCC seeks to distinguish cases decided at the pleadings stage or prior to trial.  Its argument, charitably put, is weak.  Here, there was a trial and there is a jury finding that LFI has proven LCC's willfulness by the preponderance of the evidence.

intentional infringement); <u>Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.</u>, 689 F. Supp. 2d 585, 598 n.9 (S.D.N.Y.), <u>amended on reconsideration</u> (S.D.N.Y. 2010) (laches defense unavailable because of finding of willful infringement).  The Court concludes that the evidence before the jury and its finding of willful infringement foreclose the laches defense.

Even if this Court were to reach the merits of LCC's laches argument, it would fail on the merits.  The parties agree that six years is the appropriate statute of limitations to be applied on this analysis of laches.  LFI filed the complaint in the present case on July 8, 2019. (Doc 1.)  Accordingly, unless LFI knew or should have known that LCC was infringing its marks before July 8, 2013, then "the presumption of laches does not attach and the defendant bears the burden of proving the defense." <u>Fed. Treasury Enter. Sojuzplodimport v. Spirits Int'l B.V.</u>, 809 F.3d 737, 746 (2d Cir. 2016); <u>see</u> <u>Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.</u>, 897 F.3d 413, 419 (2d Cir. 2018).  LCC points to no evidence that LFI knew or should have known that LCC was infringing its marks before the first cease and desist letter sent by LFI on December 20, 2013.  Because this occurred within the six-year statute of limitations period, the burden is on LCC to prove its laches defense, and it has failed to do so.

"Laches is an equitable defense" and "[t]he ultimate determination of whether laches bars a plaintiff's claim is within the trial court's discretion." <u>Fed. Treasury</u>, 809 F.3d at 745-46 (citing <u>Tri–Star Pictures, Inc. v. Leisure Time Prods., B.V.</u>, 17 F.3d 38, 44 (2d Cir. 1994).  To succeed on its claimed defense of laches, LCC "must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." <u>Conopco, Inc. v. Campbell Soup Co.</u>, 95 F.3d 187, 192 (2d Cir. 1996).  "A trademark owner must take 'some affirmative action to protect its rights against innocent parties' who have relied upon the trademark owner's acquiescence." <u>Gidatex, S.r.L. v. Campaniello Imps., Ltd.</u>, 82 F. Supp. 2d 126, 134 (S.D.N.Y.

1999) (citing <u>Saratoga Vichy Spring Co., Inc. v. Lehman</u>, 625 F.2d 1037, 1041 (2d Cir. 1980)).

Nevertheless, the Second Circuit has held that "a simple warning letter" sent by the trademark

owner to the alleged infringer "suffices to avoid laches." <u>Id.</u> (citing <u>Saratoga Vichy</u>, 625 F.2d at

1041).

    Here, LFI sent LCC cease and desist letters in December 2013 and July 2014 in

response to what LFI viewed as LCC's infringing activity – these letters show that LFI was not

unreasonably passive in asserting its trademark rights in the years before filing suit.  In response

to these letters, LCC sent LFI letters with lulling statements which, along with LCC's declining

U.S. business, prompted LFI not to pursue further legal action.  (May 31, 2022 Tr. at 498-99;

Def. Ex. 73.)  There was testimony at trial that it was not until LCC escalated its infringing

activity from 2017 to 2019, and LFI employees encountered instances of actual customer

confusion, that LFI decided to file the present suit.  (May 26, 2022 Tr. at 112; May 27, 2022 Tr.

at 285, 320, 364-67; May 31, 2022 Tr. at 399-404.)  Thus, the record shows that any delay in

LFI's filing of the complaint was excusable and not unreasonable.  LCC's motion for judgment

as a matter of law based on the doctrine of laches will be denied.


## II. <u>LCC'S MOTION TO AMEND OR ALTER THE JUDGMENT WILL BE DENIED.</u>

    LCC moves to amend or alter the judgment pursuant to Rule 59(e), Fed. R. Civ. P.

It argues that (i) the jury verdict awarding disgorgement of LCC's profits is merely advisory and

the Court is required to make its own findings of fact and conclusions of law on the issue of

disgorgement; (ii) if disgorgement is awarded, the jury's award was improper because it does not

account for, or improperly accounts for, LCC's costs; and (iii) LFI is not entitled to punitive

damages because it did not seek actual damages under New York law.  For the following reasons, LCC's motion will be denied.

"A court may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (quoting Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotations omitted) (alterations in original).  A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment.'"  Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2810.1 (2d ed. 1995)).  A "Rule 59(e) motion is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided."  Cordero v. Astrue, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008).  Accordingly, the rule is "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered."  Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000).

A.      The Action Was Properly Tried to a Jury as Sole Fact Finder.

LCC asserts that disgorgement of profits is a form of equitable relief that must be tried to the Court and any verdict by the jury in this case on profits is merely advisory.  The Court concludes that LCC forfeited any right it may have had to have the disgorgement remedy tried to the Court.

LFI demanded a jury trial on all issues in its complaint filed in July 2019.  (Doc 1.)  LCC never moved to strike LFI's jury demand with respect to the claim for disgorgement of profits. Further, the Court's Individual Practices required the parties to submit a proposed Joint Pre-Trial Order that included "[a] statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed."  (Individual Practices at ¶ 6(A)(iv).)[4]  The parties' submission to this Court in response to the foregoing requirement states that "[t]his is a jury trial," with no carve out for any claim or issue.  (Doc 182 at 4.)

LCC also submitted proposed jury instructions that did not include a request that the Court decide the disgorgement on its own rather than submit the issue to the jury or that the jury's verdict be merely advisory; on the contrary, LCC provided a proposed instruction that explicitly instructs the jury that it may award damages in the form of LCC's profits and how to calculate such damages.  (Doc 163 at 47-48.)  The same is true of LCC's proposed verdict sheet, which contemplates the jury deciding the amount of profits to be awarded as damages.  (Doc 164 at 14.)

The Court provided the parties with its proposed jury instructions during the trial but before charging the jury, requesting that the parties provide any comments or objections to the proposed instruction – LCC never objected to the issue of disgorgement of profits being submitted to and decided by the jury and never claimed that its position was that such jury verdict would be merely advisory.[5]

---

[4] https://nysd.uscourts.gov/sites/default/files/practice_documents/PKC%20Individual%20Practices%20-%20Revised%20Jan%202020_0.pdf (last accessed Oct. 7, 2022).

[5] This contrasts with the issue of whether to submit to the jury the claim under New York General Business Law section 360-L that permits only an award of injunctive relief.  The Court heard the parties on the issue before deciding that unless further authority was found, it would not be submitted to the jury.  (May 27, 2022 Tr. at 161-63.)  The claim was ultimately dismissed by stipulation. (Doc 210.)

Under Rule 39(c)(2), Fed. R. Civ. P., "[i]n an action not triable of right by a jury, the court, on motion or on its own . . . may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right."  And the Second Circuit has stated that "where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence may be deemed 'consent' under Rule 39(c)."  Broadnax v. City of New Haven, 415 F.3d 265, 272 (2d Cir. 2005).  LCC's silence amounted to consent to a binding jury verdict on the disgorgement damages.

B.   The Jury Verdict on LCC's Profits Was Consistent with the Evidence, the Law and the Court's Instructions.

Next, LCC argues that the jury erred in failing to deduct LCC's expenses and costs from its gross revenues in arriving at profits to be awarded to LFI.  Specifically, it argues that because its infringing product revenue amounts to 45% of its total revenue, 45% of its total expenses and costs should have been deducted in arriving at LCC's profits from the sale of the infringing goods.  The Court concludes that the jury's verdict was sound and in accordance with the Court's instructions that were correctly framed.

As noted, the jury found that LCC's infringement was willful.  (Doc 212 at 1).  "When infringement is found to be willful, the district court should give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product.  Unless a strong nexus is established, the court should not permit a deduction for the overhead category."  Hamil America Inc. v. GFI, 193 F.3d 92, 107 (2d Cir. 1999).

The Court instructed the jury on the deduction of expenses and costs, noting that the burden of proof was on LCC to establish these deductions.  The Court instructed the jury that

LCC had no evidence on the costs of goods and thus no deduction could be made be made for those costs.  As to other costs, the Court instructed the jury to consider whether there is a connection between the overhead expense and the infringing goods to warrant a deduction:

> Under the Lanham Act, plaintiff may be entitled to damages in the form of profits earned by defendant from the sale of its products that are attributable to the infringement.
>
> If you determine that an award of defendant's profits is appropriate, profit is determined by deducting expenses from gross revenue.  Plaintiff has the burden of proving by a preponderance of the evidence the amount of defendant's gross revenues from its sale of products bearing the infringing mark.
>
> Expenses are operating and production costs incurred in producing the gross revenue.  Defendant has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue.  You may not deduct the costs of goods sold and other direct costs associated with those goods because defendant can point to no evidence in the record which would differentiate the costs of assertedly infringing goods from those that are not asserted to be infringing.
>
> Also, defendant must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products in order to deduct the expense from its gross revenues for infringing sales.  An item of overhead may be deducted if, but only if you find that the entirety of the overhead expense is attributable to the infringing goods.  If defendant fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from the gross revenues.

(June 1, 2022 Tr. at 625-26.)[6]

During deliberations, the jury sought further clarity on the last two sentences of the above instruction relating to "overhead expense."  Without objection from LCC, the Court gave the following supplemental instruction:

---

[6] The Court discussed the instruction with the parties and asked if LCC had any objection.  LCC's counsel responded: "No, your Honor, other than obviously we also preserve our right with our motion with respect to damages sought by plaintiff."  (June 1, 2022 Tr. at 597-98.)

> The Court instructs you that for these purposes overhead means the ongoing costs to operate a business other than the cost of goods sold and other direct costs associated with those goods.  Overhead includes items such as rent, utilities and support staff salaries.  If defendant has proven that an overhead expense applies exclusively to the infringing goods, then you may deduct it from gross revenues attributable to the infringing goods.  If defendant has not so proven, then you may not deduct it from gross revenues attributable to the infringing goods.

(Court Ex. 20; June 2, 2022 Tr. at 664-67).

The jury's verdict was consistent with a finding that LCC had not met its burden of proof on overhead expenses.  This was fully supported by the trial evidence.

The trial testimony from LCC's witness demonstrated that it sold both home goods and clothing in its stores and on its website.  (May 27, 2022 Tr. at 246.)  The costs presented to the jury by LCC did not distinguish expenses and costs of the infringing goods from other items in its home goods and the clothing lines.  (Id. at 247-48.)  As to store rentals and warehouse costs, its witness testified: "It's extremely difficult to divide those.  I would never do that on a product basis.  We do it as a total cost."  (Id. at 247.)  The witness confirmed that the figures presented to the jury for administrative costs, personnel costs, selling expenses, financial expenses and marketing costs were combined figures for all clothing and home goods.  (Id. at 247-48.)

LCC now argues that because revenue from its infringing products amounted to 45% of its total U.S. gross revenue, the Court should assume the role as sole fact finder and subtract 45% of LCC's expenses and costs from gross revenue to arrive at profits.  Put another way, it argues that the Court as sole fact finder should assume that the expenses and costs attributable to infringing goods were precisely the same percentage as their contribution to gross revenue.  LCC's position is without merit.  LCC's proposed formula is

an extrapolation that uses percentage of revenue as a surrogate for overhead.  For example, no effort was made at trial to show the floor space needed to display or warehouse infringing items of bedding compared with clothing or other items of home goods.  LCC's proposed extrapolation does not provide a "strong nexus" that "directly and validly" connects "each category" of costs to the sale and production of the infringing products.  See Hamil, 193 F.3d at 107.

"[A] court should not hesitate to reject a formula which allows the willful infringer to deduct more of its overhead than was directly implicated in the manufacture of the infringing product."  Id.  Here, the Court did not reject or foreclose any extrapolation formula proffered by LCC on overhead expenses.  It did not rule as a matter of law that LCC could not argue to the jury that it had established offsetting overhead expenses.  Rather, the jury implicitly found that LCC had not met its burden of proving offsetting overhead expenses attributable to the infringing goods.

LCC also argues that the disgorgement award should be altered because LFI failed to prove instances of infringement that occurred prior to 2017.[7]  The Court concludes that LFI provided ample evidence of infringement prior to 2017.  For example, Tommy Lindhe testified at trial that LCC began operating brick-and-mortar stores in the U.S. in 2012, and that those stores sold home textiles that contained the infringing marks.  (May 26, 2022 Tr. at 94-95, 138-39.)  LFI also showed at trial that it sent cease and desist letters to LCC in 2013 and 2014 regarding what LFI considered infringing activity by LCC.  (Def. Ex. 73.)  And there was evidence that LCC engaged in U.S.-focused social media marketing using the infringing marks prior to 2017.  (May 26, 2022 Tr. at 85-86, 89-94; May 27, 2022

---

[7] The Court notes the tension between LCC's argument that there is no evidence of infringement prior to 2017 and its argument that LFI's claims are barred by laches because the infringement began in 2012.

Tr. at 239-42.)  The jury appropriately considered this evidence and concluded that LCC

infringed LFI's trademarks prior to 2017.  The disgorgement of profits prior to 2017 is not a

"clear error" or "manifest injustice" that would require alteration of the judgment.  See

Metzler Investment, 970 F.3d at 142.

        C.      <u>Punitive Damages Are Permissible Under the State Law Claim.</u>

        LCC contends that the Court should alter the jury's award because LFI may not

recover punitive damages on the state law unfair competition claim because the jury did not find

actual damages on the claim.  As will be shown, because the elements of LFI's Lanham Act

claim on which the jury awarded damages coincides with the elements of the state law claim of

unfair competition, the Court properly instructed the jury as a matter of law that a finding of

liability on the Lanham Act claim was a finding of liability on the state law unfair competition

claim.  In turn, a finding of liability on the state law unfair competition claim permitted the jury

to consider the question of punitive damages.

        To begin with, there is no dispute that punitive damages may be awarded on the

state law unfair competition claim. <u>See</u> <u>Getty Petroleum Corp. v. Island Transp. Corp.</u>, 878 F.2d

650, 657 (2d Cir. 1989) ("[W]e see no merit in [defendant's] contention that punitive damages

are not available under New York law for a claim of unfair competition.").  At the Final Pretrial

Conference, the following exchange occurred:

> THE COURT: But what's been proffered to me is that you can get
> punitive damages under New York law for unfair competition
> because it sounds in tort, which sounds plausible.  Do you have
> any reason to challenge that proposition?

> [LCC's COUNSEL]: No, I think that's accurate.  I think what the
> memo or what we were trying to do is make the plaintiff put its
> cards on the table and say which of these things is where the
> damages actually lie instead of just throwing it all against the wall
> and hoping something sticks.

(Aug. 31, 2021 Tr. at 40-41.)

On the second day of trial and with the jury instructions in mind, the Court

inquired whether on the facts of this case, a jury verdict on the Lanham Act claim would

necessarily establish the state law trademark infringement and unfair competition claims. The

following exchange transpired with LCC's counsel:

> THE COURT: [D]o you agree, from the defense standpoint, that if the
> federal trademark infringement claim is established, that the New York
> unfair competition claim is established as well?
>
> [LCC's COUNSEL]:  Yes, we do, your Honor.
>
> THE COURT: Okay.  All right.  So it would seem to me, based on what I
> have here, that it would be appropriate for me to tell the jury that if they
> find the federal trademark claim established, that the state unfair
> competition, the state common law trademark infringement is established,
> and on those claims they may consider the issue of punitive damages.

(May 27, 2022 Tr. at 175.)  The Court set a schedule for objections to the Court's tentative

rulings and on the latest draft of the jury instructions.  No pertinent objection was lodged

by LCC.

While LCC argued that LFI had not presented facts that would warrant an

award of punitive damages, there was no substantive objection by LCC to the content of

the instruction on the state law unfair competition and trademark infringement claims nor

any objection to the punitive damage instruction.[8]  The jury was instructed that "if you

---

[8] The New York common law trademark and unfair competition claims were pled in separate counts of the
complaint, but on the facts of this case, they are the same.  "Historically, two causes of action have existed to protect
the user of a trade-mark or trade name from its improper use by another--viz., trade-mark infringement and unfair

17

have found for [LFI] on the federal Lanham Act claims, then you have found for [LFI] on

trademark infringement and unfair competition under New York law" and further that "[i]f

you have found for [LFI] on the federal Lanham Act claims, you may consider whether to

award punitive damages for unfair competition under New York law." (June 1, 2022 Tr.

at 626.) At no time did LCC's counsel urge that a separate finding of damages or actual

injury on the common law unfair competition claim was necessary.

Seizing on the proposition of New York law that "[i]n order to justify an award of

punitive damages there must be a showing of actual injury which would justify an award of

actual or compensatory damages," see Ebker v. Tan Jay Int'l Ltd., 741 F. Supp. 448, 472

(S.D.N.Y. 1990) (citing Gill v. Montgomery Ward & Co., 284 A.D. 36, 41 (3d Dep't, 1954)),

LCC argues for the first time in this motion that an award of the infringer's profits does not show

actual injury. But the Court's comprehensive instructions on punitive damages included an

instruction that "[t]he amount of punitive damages that you award must be both reasonable and

proportionate to the actual and potential harm suffered by plaintiff and to the compensatory

damages you awarded plaintiff." (June 1, 2022 Tr. at 628) (emphasis added). This jury awarded

LFI an amount of punitive damages ($925,000) that was substantially less than the damages

awarded ($1,641,963).

There is also nothing about the nature of disgorgement damages that precludes them from

serving as the premise for a punitive damage claim. In Tiffany & Company v. Costco Wholesale

Corporation, Chief Judge Swain rejected Costco's argument that Tiffany was precluded from

---

competition." Allied Maint. Corp. v. Allied Mech. Trades, Inc., 42 N.Y.2d 538, 542 (1977). "It is fundamental that
the substantive law of trade-marks is merely a portion of the broader law of unfair competition. . . ." Dell Publ'g Co.
v. Stanley Publ'ns, Inc., 9 N.Y.2d 126, 133 (1961). Unfair competition is broader and protects "nontechnical,
common-law trade-mark--marks used although not registered--as well as trade names." Allied Maint., 42 N.Y.2d at
542. "[B]oth require a showing that the public is likely to confuse the defendant's product or service with that of the
plaintiff. . . ." Id. at 543. On the facts of this case the two claims merge.

seeking punitive damages because it "only sought an accounting of profits and not 'actual

damages.'" 274 F. Supp. 3d 216, 225-26 (S.D.N.Y. 2017).  Rather, the court held, "punitive

damages are available where a plaintiff pursued an accounting of profits and statutory damages

under the Lanham Act." Tiffany & Co. v. Costco Wholesale Corp., No. 13 CV 1041, 2019 WL

120765, at *6 (S.D.N.Y. Jan. 7, 2019).  The Second Circuit vacated and remanded the decision

on other grounds, but it expressly "decline[d] to address the question whether punitive damages

would be available to Tiffany if a jury were to find in its favor on remand."  Tiffany & Co. v.

Costco Wholesale Corp., 971 F.3d 74, 96 (2d Cir. 2020).  Without the benefit of controlling case

law speaking directly to this issue, the Court concludes that, under the circumstances of the

present case, the jury's award of disgorgement of profits provides proof of the actual harm to LFI

that supports the award of punitive damages.

        Disgorgement under the Lanham Act is a type of compensatory award.  One such

indication comes from § 1117(a) itself, which states that a court may adjust "the amount of the

recovery based on profits" if it finds the recovery excessive or inadequate, but that in either case

the recovery "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a) (emphasis

added).  The Supreme Court has observed that the Lanham Act provides for "compensatory

recovery measured by the profits that accrued to the defendant by virtue of his infringement, the

costs of the action, and damages which may be trebled in appropriate circumstances."

Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 720 (1967), superseded by

statute on other grounds, Pub. L. No. 93-600, § 3, 88 Stat. 1955 (emphasis added).  Courts in this

District routinely characterize the disgorgement of profits under the Lanham Act as an award of

actual or compensatory damages.  See, e.g., Malletier v. Artex Creative Int'l Corp., 687 F. Supp.

2d 347, 355-56 (S.D.N.Y. 2010) ("The typical starting point for assessing statutory damages is

actual damages, such as plaintiff's loss and defendant's profits."); <u>Sara Lee Corp. v. Bags of New York, Inc.</u>, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (characterizing § 1117(a) of the Lanham Act, which provides for disgorgement of profits, as providing "strictly compensatory relief").  And other district courts within this Circuit have done the same.  <u>See, e.g.</u>, <u>Safety Nat'l Casualty Corp. v. Floor and Decor Outlets of America, Inc.</u>, No. 21-cv-2023, 2022 WL 1720433, at *5 (E.D.N.Y. May 27, 2022) ("Under New York law, then, [Lanham Act] disgorgement awards are, at least in part, compensatory in nature."); <u>Ideal World Mktg., Inc. v. Duracell, Inc.</u>, 997 F. Supp. 334, 338 (E.D.N.Y. 1998) ("Although profits and damages are, as a practical matter, two very different concepts, . . . it is clear from the Second Circuit's language in [<u>George Basch Co. v. Blue Coral, Inc.</u>, 968 F.2d 1532 (2d Cir. 1992)] that, in the context of trademark infringement, there is a significant overlap between them.").

In addition, the trial record demonstrated that LFI suffered actual harm from LCC's conduct.  (<u>See, e.g.</u>, May 27, 2022 Tr. at 320-21 (testimony by Patricia Rogers that in fall 2019 two customers became frustrated after arriving at an LFI showroom that they had confused for an LCC store), 364-67 (testimony by Robert Stamper that in summer 2018 at a home goods exposition several designers told Stamper that they were not interested in purchasing LFI's products or visiting LFI's showroom after those designers had visited an LCC store and concluded that the offerings were "just not [their] look").)

LCC's motion to alter or amend the judgment because the jury was not asked to find actual harm to LFI as a pre-condition to an award of punitive damages on the unfair competition claim will be denied.

III. <u>LFI'S MOTION FOR A PERMANENT INJUNCTION WILL BE GRANTED.</u>

        LFI moves for a permanent injunction pursuant to the Lanham Act, 15 U.S.C. §

1116.  For the following reasons, LFI's motion will be granted to the extent indicated herein.

        "The decision to grant or deny permanent injunctive relief is an act of equitable

discretion by the district court, reviewable on appeal for abuse of discretion."  <u>eBay Inc. v.</u>

<u>MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).  A plaintiff seeking a permanent injunction in

a trademark infringement case must demonstrate: "(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for

that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction."  <u>Id.</u>; <u>Salinger v. Colting</u>, 607 F.3d 68, 78 (2d Cir. 2010) ("<u>eBay</u> strongly

indicates that the traditional principles of equity it employed are the presumptive standard for

injunctions in any context."); <u>Fresh Del Monte Produce Inc. v. Del Monte Foods Co.</u>, 933 F.

Supp. 2d 655, 660 (S.D.N.Y. 2013) (concluding that the <u>eBay</u> test for permanent injunctive relief

applies to Lanham Act cases).  The Court will address each of these considerations in turn.

        "The first and second factors in the <u>eBay</u> test often blend together, and in each

case, 'the court must actually consider the injury the plaintiff [has] suffer[ed] . . . , paying

particular attention to whether the "remedies available at law, such as monetary damages, are

inadequate to compensate for that injury."'"  <u>Fresh Del Monte Produce</u>, 933 F. Supp. 2d at 664

(quoting <u>Salinger</u>, 607 F.3d at 80.)  "Irreparable harm exists in a trademark case when the party

seeking the injunction shows that it will lose control over the reputation of its trademark . . .

because loss of control over one's reputation is neither 'calculable nor precisely compensable.'"

<u>U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.</u>, 800 F. Supp. 2d 515, 541-42 (S.D.N.Y. 2011)

(citing <u>New York City Triathlon, LCC v. NYC Triathlon Club, Inc.</u>, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010)).

The jury found that LFI proved by a preponderance of the evidence that consumers were likely to be confused between the marks of LFI and LCC.  (Doc 212 at 1; June 1, 2022 Tr. at 617-18.)  Because of this confusion, LFI will not be able to control its reputation and good will.  Indeed, there was testimony at trial that consumer confusion between LFI and LCC actually did harm LFI's reputation because certain consumers created an impression of LFI based on their knowledge of LCC's products.  (<u>See, e.g.</u>, May 27, 2022 Tr. at 320-21, 364-67.) LFI's careful efforts to curate its branding are therefore undercut by the confusion caused by LCC's marks.  Accordingly, LFI is likely to be irreparably injured in the absence of a permanent injunction because LFI would lose control over its reputation and goodwill, and such reputational harm cannot be easily quantified or remedied through money damages alone.  <u>See</u> <u>U.S. Polo Ass'n</u>, 800 F. Supp. 2d at 541-42.

As to the balance of the hardships, LCC contends that it would be subject to significant hardship primarily because it has contributed significant time and resources to ensuring its marketing and advertising complied with the terms of the Settlement Agreement.[9]  It also asserts that any hardship to LFI must be minimal because LCC had been using its Lexington marks in the U.S. pursuant to the terms of the Settlement Agreement since 2012.  Given the jury's finding that LCC breached the Settlement Agreement (Doc 212 at 1), the Court gives little weight to this argument. On the contrary, LCC's past conduct shows its willingness to violate the terms of the Settlement Agreement, which does not provide support for its claim of hardship.

---

[9] For a recounting of the terms of the Settlement Agreement, see the Court's opinion and order on the parties' cross-motions for summary judgment. (Doc 115); <u>Lexington Furniture Indus.</u>, 2021 WL 1146276, at *10.

Rather, the hardship to LFI caused by LCC's infringement of its trademarks outweighs any claimed hardship by LCC.

As to serving the public interest, the public "has a protectable interest in being free from confusion, deception and mistake." U.S. Polo Ass'n, 800 F. Supp. 2d at 541. LCC's primary argument with respect to the interest of the public is that LFI has failed to show that consumers are likely to be confused by LCC's marks. This argument, however, is wholly contradicted by the jury's verdict at trial that LCC infringed upon LFI's marks – which required a finding of a likelihood of consumer confusion – as well as the trial testimony regarding incidents of actual consumer confusion.

LCC contends, however, that LFI's proposed permanent injunction (Doc 237) is overbroad. True, a permanent injunction must be "narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." Starter Corp. v. Converse, Inc., 170 F.3d 286, 299 (2d Cir. 1999) (quoting Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994)). But a "party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party . . . and a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement." Guthrie Healthcare Sys., 826 F.3d at 47 (quoting Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 2017 (2d Cir. 2003), abrogated on other grounds by 4 Pillar Dynasty LLC v. New York & Co., 933 F.3d 202, 215-16 (2d Cir. 2019)).

The parties previously agreed in the Settlement Agreement that LCC could use the Lexington flag logo and "Lexington Clothing Company" as the primary identifier on certain products sold in the U.S. LCC now contends that the permanent injunction is overbroad because it does not carve out the flag logo and "Lexington Clothing Company" for use by LCC. But the

jury found that LCC breached the Settlement Agreement, that LCC willfully infringed upon LFI's trademarks and that LCC's use of Lexington marks caused a likelihood of consumer confusion.  The permanent injunction appropriately enjoins LCC's use of Lexington-formative marks, including the flag logo and "Lexington Clothing Company," in the future.

The proposed injunction is also appropriately tailored in scope.  It only enjoins the use of infringing marks on products or in advertising "sold in or directed to the United States." (Doc 237 at 2.)  LFI challenged only LCC's use of such marks in the U.S., and the geographic scope of the proposed permanent injunction is limited to only the U.S.  The proposed permanent injunction also applies only to "Home Goods" which includes "home furnishings, textiles and decor."  (Id.)  This is an appropriate tailoring of the products to which the permanent injunction applies and also avoids unnecessarily burdening LCC, as LCC admits that it primarily sells clothing and that its home goods offerings are a small subset of its overall business.  The scope of the proposed permanent injunction, including geographic scope and scope of products implicated, is therefore appropriately tailored to the circumstances of the case and would not unnecessarily burden LCC.  LFI's proposed permanent injunction will be granted.

CONCLUSION

The Court has considered all of the parties' arguments, including those not explicitly addressed herein.  LCC's motion to alter or amend the judgment (Doc 241) is DENIED.  LCC's motion for judgment as a matter of law (Doc 238) is DENIED.  LFI's motion for a permanent injunction (Doc 234) is GRANTED.  LFI shall update its application for fees and costs within 21 days of the date hereof.  LCC may respond 7 days thereafter.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        October 24, 2022